THE STATE OF OHIO, APPELLEE, *v.* LATHAN, APPELLANT.

[Cite as State v. Lathan (1972), 30 Ohio St. 2d 92.]

(No. 71-508—Decided May 10, 1972.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Harvey R. Monck,* for appellee.

*Mr. Isaac Schulz,* for appellant.

STERN, J. The question upon appeal involves the issue of whether the improper pre-trial identification procedures employed by the police so tainted the victim-witness' in-court identification of the defendant as to require that such identification be excluded from evidence at the trial, or whether the in-court identification was shown by clear and convincing evidence to have been the result of an observation having an independent origin other than the pre-trial confrontation.

There is no question that defendant's Sixth Amendment right to counsel at *any* critical confrontation held by the prosecution at pre-trial proceedings was violated by the

procedures employed by the police. The fact that this confrontation occurred prior to indictment in no way lessens the fact that the results might well determine his fate, and that "counsel's absence might derogate from the accused's right to a fair trial." *United States* v. *Wade* (1967), 388 U. S. 218; *Stovall* v. *Denno* (1967), 388 U. S. 293, 298.

There having been no effective showing that defendant waived his right to counsel at the pre-trial confrontation, we need only comment that the apparent practice of holding a "confrontation" without counsel, in an instance where a suspect refuses to waive his right to counsel at a lineup, constitutes a naked attempt by the police to circumvent the dictates of the holding in *Wade, supra,* and *Gilbert* v. *California* (1967), 388 U. S. 263.* We strongly admonish against such procedure.

The dictates of *Wade* and *Gilbert* do not require the automatic exclusion of an in-court identification so long as the state can either establish by clear and convincing evidence that the in-court identification was based upon an observation of an independent origin other than the pre-trial confrontation, or, that the error in its admission was harmless.

The court, in *Wade,* at page 241, stated that the test to be applied in determining whether the in-court identification was based upon observations of an independent origin, is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguished to be purged of the primary taint."

In making this determination, "* * * the totality of the circumstances surrounding the identification must be

---

*Testimony of a detective of the Cleveland Police Department, in response to the trial court's inquiry as to why Mrs. Kitka was brought in to see the suspect after he had refused to waive his right to counsel in a line-up, was: "The next procedure is, if they refuse to waive counsel at the lineup, then we confront."

considered." *State* v. *Jackson* (1971), 26 Ohio St. 2d 74, 77.

An examination of Mrs. Kitka's testimony at trial regarding the in-court identification of the defendant indicates that such identification did not stem from, and was not tainted by, the illegal confrontation. However, an examination of the totality of the circumstances surrounding the identification, including the prior opportunity to observe the alleged criminal act and the discrepancy between the pre-confrontation description given the police and the defendant's actual description, indicates that little opportunity existed for an independent observation at the time of the crime.

Stevens, although also a victim, was unable to provide a meaningful description of either of the attackers, and has testified that due to the bad lighting conditions both inside and outside the building he was unable to identify either. Further, we note that Mrs. Kitka was never afforded an opportunity to clearly see the face of her attacker, as was the victim in *State* v. *Jackson, supra,* at 78, or the victim in *State* v. *Hurt* (1972), 30 Ohio St. 2d 86. The testimony reveals that she was approached from behind while outside the building, and although there was a light directly overhead, her attacker's hat shadowed his face. Her only glimpse (three to five seconds) of her assailant was while he was holding her from behind with a gun to her head.

Mrs. Kitka's pre-confrontation description to the police was meager, including no facial features other than that her attacker was light-complected and had a mustache. She also stated that her attacker was approximately six feet tall, whereas the defendant herein is 5 foot 7 inches tall.

We find, then, a conflicting situation in which the victim, although afforded only a meager opportunity to see her assailant at the time of the robbery, and having been unable to accurately describe him immediately after the robbery, testified eight months later as to her firm recollection of the identity of her assailant. The court, in *Wade, supra* (388 U. S. 218), at 229, having foreseen such a possi-

bility, and being aware that "* * * the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest," stated, at page 241: "It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the line-up."

An examination of the circumstances of the confrontation, in light of the ten criteria used in *United States* v. *O'Connor* (1968), 282 F. Supp. 963, 965, indicates the following:

Prior to the confrontation, which took place in a city police station, Mrs. Kitka was advised that the suspect had been apprehended in the company of a young lady who had used a charge-plate that had been stolen from her on the night of the robbery. Unable to identify the young lady, and knowing that the male suspect was still in jail, Mrs. Kitka specifically requested that she be allowed to see the male suspect since "the only way this young lady could have got the [Mrs. Kitka's] charge-plate was from the man who held me up."

Mrs. Kitka was also told, prior to the confrontation, that the suspect had refused to take part in a line-up, when in fact he had only refused to waive his right to counsel at line-up. No reason was advanced as to why a line-up could not have been held subsequent to the defendant having obtained counsel, and no emergency, such as existed in *Stovall, supra,* is found in the record.

At the confrontation itself, the defendant was the only black person in the room, and he was the only person whom Mrs. Kitka did not know. He was wearing clothing similar to the clothing described by Mrs Kitka the night of the robbery, and he was instructed to wear a hat prior to the identification being made. His status as a suspect in the eyes of the police was confirmed by a detective's statement: "We'll bring you together so that you can identify your man, in a separate room," as well as the fact that the defendant was still in jail although not directly linked to the wrongful use of the stolen charge plate.

It is difficult to imagine circumstances more suggestive to a wrongful identification than those which occurred in this matter. This high potential for a miscarriage of justice, when weighed against the meager opportunity for the witness to clearly see her attacker on the night of the crime, and her failure to provide a description which accurately described the defendant herein, requires us to find on this issue in favor of the defendant.

Without placing total weight on any one of the above criteria, and with acknowledgment that additional criteria may exist in other cases, we hold that the totality of the circumstances surrounding this in-court identification fails to establish by clear and convincing evidence that the in-court identification of the defendant was the result of an observation of an independent origin.

There being no cumulative evidence sufficient to show the identity of the defendant beyond a reasonable doubt, it follows that the error in admitting the tainted in-court identification was not harmless.

The judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, LEACH and BROWN, JJ., concur.

CORRIGAN, J., dissents.