THE STATE OF OHIO, APPELLEE, *v.* TINGLER, APPELLANT.

(No. 72-97—Decided July 19, 1972.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. James J. O'Grady,* for appellee.

*Mr. Joseph H. Hans,* for appellant.

SCHNEIDER, J. On October 20, 1968, at approximately 10:30 p. m. a white male wearing no mask entered a Law-

son Milk Company Store in Columbus, Ohio, and at gunpoint bound and gagged the store manager Phyllis Crow, employee Susan Pack and visitor James Stevens. After taking money from a cash register and safe he shot and bludgeoned to death Miss Pack and Stevens and assaulted Mrs. Crow who thereafter freed herself and called the authorities.

The store was well lighted and Mrs. Crow saw the assailant enter the store and bind and gag her and the decedents. Because she was placed face down on the floor she was only able to hear shots and the breaking of bottles in the area of the store occupied by the decedents.

That same night, Mrs. Crow gave the police an exhaustive description of the assailant and assisted them in preparing a detailed composite drawing of him. On the day following, after examining approximately 820 pictures of known criminals she identified appellant as the man who entered the Lawson Store on the night in question.

Shortly thereafter, appellant was charged and a warrant was issued for his arrest.

Approximately eight months after the robbery, appellant was apprehended by federal authorities in Dill City, Oklahoma.

After appellant's return to Columbus, the prosecution arranged a confrontation between Mrs. Crow, the sole survivor of the robbery, and the accused without the presence or assistance of counsel.

## I.

Prior to trial appellant filed a written motion for a preliminary "hearing to determine whether or not the . . . [pre-trial confrontation] *was in violation of the constitutional rights* of . . . [appellant] *as enumerated in the Wade, Gilbert and Stovall cases*" and for an order "to determine whether or not the . . . [pre-trial confrontation] *was so tainted* as to deny the said Mrs. Phyllis Crow the right of in court identification." (Emphasis supplied.)

Through the imprecision and ambiguity which cloud the motion, it may be discerned that appellant succeeded

in suggesting to the trial court, first, the fact of the prior out-of-court confrontation; second, that counsel for the defendant was not there present; and, third, that the confrontation was impermissibly suggestive in violation of *Stovall* v. *Denno* (1967), 388 U. S. 293. See, also, *State* v. *Lathan* (1972), 30 Ohio St. 2d 92.

At the pre-trial hearing, the prosecution established the fact of the confrontation and the absence of counsel, and appellant established that Mrs. Crow identified him at that time.* On the other hand, appellant failed to prove any suggestiveness at the confrontation. Therefore, the trial court was correct in finding that appellant's constitutional rights, as announced by *Stovall*, had not been violated. On the other hand, that court's failure to find a violation of the rule announced in *United States* v. *Wade* (1967), 388 U. S. 218, and *Gilbert* v. *California* (1967), 388 U. S. 263, and its failure to order that the testimony of the identification made by Mrs. Crow at the confrontation be excluded from the trial constituted error. *State* v. *Lathan*, *supra* (30 Ohio St. 2d 92, 96).

---

*Prior to the hearing the state made clear its position by stating that "there was no out of court identification in this case; however, inasmuch as we are having a hearing on this particular point . . . [we will proceed]."

At the hearing, the state called as its only witness Officer Jones, who assisted in transporting the accused to Columbus from Dill City, Oklahoma. He testified that witness Crow was brought to the police station only for the purpose of giving a statement in the presence of the accused and not to secure an identification of him.

Witness Crow, who was called by the defense, corroborated Officer Jones' testimony. However, she admitted that she identified appellant.

Whether or not witness Crow was summoned to the police station for a purpose other than identifying the accused, she neverthless confronted him in the absence of counsel, was asked to identify him and proceeded to identify him at that time.

The confrontation procedure employed by the Columbus police authorities was an attempt to provide an opportunity for Mrs. Crow to give a statement in the presence of the accused and for her to identify him. We again admonish against any such procedure when accused's counsel is not present. See *State* v. *Hurt* (1972), 30 Ohio St. 2d 86, 91, and *State* v. *Lathan* (1972), 30 Ohio St. 2d 92, 96

Appellant having been formally charged prior to the confrontation, it was a "critical stage" requiring the presence of counsel notwithstanding *Kirby* v. *Illinois* (decided June 7, 1972), U. S. , which refused to extend the *Wade-Gilbert* rule to a point antedating a formal charge. See *State* v. *Sheardon* (1972), 31 Ohio St. 2d 20. But the *Wade-Gilbert* rule is qualified by the harmless error rule of *Chapman* v. *California* (1967), 386 U. S. 18.

However, in this case the state did not attempt to introduce any testimony relating to the illegal confrontation at the trial. On the other hand, the defense brought out the fact of the confrontation to the jury by cross-examination, and thus invited any prejudice resulting therefrom which he now seeks to avoid.

The first question urged by appellant for our resolution is whether Mrs. Crow's in-court identification of appellant was tainted by the pre-trial confrontation.

We hold that this question was never presented to the trial court and consequently is without merit. As expressed in the pre-trial motion, appellant's contention to the trial court was that the *confrontation* "was so tainted [presumably by the absence of counsel] as to deny the said Mrs. Phyllis Crow the right of in court identification." To substantiate that he did not there mean that the in-court identification *was tainted by* the pre-trial confrontation, the record reveals that his counsel expressly refused to move to suppress any in-court identification and, having refused and failed to so move to suppress, counsel failed to object at trial to any in-court identification.

Moreover, the in-court identification clearly was based on a source independent of the pre-trial confrontation.

## II.

The second question raised in this appeal is whether the trial court erred in the admission in evidence of two black and white photographs of the murder victims on mortuary tables.

The two pictures were the only ones in which decedents' faces appeared. Nineteen other photographs taken at the scene of the crime were also admitted in evidence.

In *State* v. *Hill* (1967), 12 Ohio St. 2d 88, paragraph two of the syllabus, we held:

"In the trial of a defendant charged with murder in the first degree, the admission or exclusion of photographs of the murder victim ... rests within the sound discretion of the court, and, if there is no abuse of that discretion in the circumstances of the particular case, error may not be predicated on the admission of such photographs in evidence." See, also, *State* v. *Wilson* (1972), 30 Ohio St. 2d 199.

"The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant." *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 25.

Inspection of the photographs shows that they are not so gruesome that they could tend unreasonably to inflame the jury against appellant. They were properly introduced in connection with the testimony of the state's pathologist to identify the bodies upon which he performed autopsies.

Therefore, we cannot say that the admission of the two photographs, to which no specific objection was made at trial, prejudiced appellant's rights to a fair trial or that the trial court abused its discretion in admitting them in evidence.

### III.

The third question is whether the trial court erred in overruling appellant's motion for a change of venue because of pre-trial publicity.

Sixteen out of 65 veniremen examined were disqualified for pre-formed opinions. Of the 12 jurors seated, 11 indicated some prior knowledge of the case. However, the record is clear that their opinions were not fixed but would yield readily to the evidence presented.

Where the record of the *voir dire* of the venire is devoid of "demonstrating prejudice against the appellant arising from publicity, there can be no finding of abuse of discretion by the trial court in failing to order a change of venue." *State* v. *Kassow* (1971), 28 Ohio St. 2d 141, 149, and *State* v. *Swiger* (1966), 5 Ohio St. 2d 151.

## IV.

The fourth question is whether the trial court erred in overruling appellant's pre-trial motion for inspection and examination of all statements made by appellant while in police custody.

Additionally, appellant claims that had he been able to discover an incriminating statement made to an FBI agent, the latter's testimony at trial would not have taken him by surprise. The agent testified that appellant "said that the .380 automatic pistol that he knew the location of was used in the murder of the two kids at the Lawson Store."

When it became apparent that the agent would so testify appellant moved for a *voir dire* outside the presence of the jury to determine voluntariness. The testimony disclosed that the statement had been brought to the prosecutor's attention during the course of the trial after the agent had been subpoenaed to testify on other matters.

The trial court found the statement to have been voluntarily made and admitted it in evidence.

Discovery of the statement by appellant would have been impossible due to the state's admitted lack of knowledge of it prior to trial.

This state adheres to a rule of limited discovery as announced in *State* v. *White* (1968), 15 Ohio St. 2d 146:

"In a criminal case, the defendant has a right to an *in camera* inspection by the trial court, with counsel for the state and the defendant, to determine the existence of inconsistencies between the testimony of the prosecution's witnesses and their prior statements."

Moreover, appellant does not indicate how he was prejudiced by the state's failure to disclose or how prior disclosure would have had any bearing on his case. Therefore, the trial court did not abuse its discretion in overruling the motion for discovery and inspection. See *State* v. *Laskey* (1970), 21 Ohio St. 2d 187, 192, and *State* v. *Kassow* (1971), 28 Ohio St. 2d 141, 148.

## V.

The fifth question is whether the trial court erred in its charge to the jury on alibi.

Appellant contends that the charge tended to shift the burden of proof of conviction to him instead of leaving it with the state.

This court considered an almost identical charge in *State* v. *Childs* (1968), 14 Ohio St. 2d 56, 63, and on authority of paragraph four of the syllabus of that case there is no error.

## VI.

However, on authority of *Furman* v. *Georgia* (decided June 29, 1972), 33 L. Ed. 2d 346, the judgment of the Court of Appeals is modified to the extent of reducing the death sentence to one of life imprisonment. See *State* v. *Leigh* (1972), 31 Ohio St. 2d 97.

*Judgment accordingly.*

HERBERT, STERN, LEACH and BROWN, JJ., concur.

O'NEILL, C. J., and CORRIGAN, J., concur in the judgment.