OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant, Lori L. Rogge, guilty of robbery in violation of R.C. 2911.02(A)(2). From that judgment, appellant raises the following assignments of error on appeal:
"FIRST ASSIGNMENT OF ERROR
 THE JURY RELIED UPON EYEWITNESS TESTIMONY OF A WITNESS WHICH WAS SO UNRELIABLE AND INCONSISTENT AS TO CONSTITUTE A MISCARRIAGE OF JUSTICE; CLEARLY REVERSIBLE ERROR
"SECOND ASSIGNMENT OF ERROR
 THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
On July 25, 1997, appellant and her boyfriend, Darrin M. Flynn, were indicted and charged with the July 16, 1997 robbery of the In Out Mart at 2007 W. Sylvania Avenue, Toledo, Ohio. In addition, Flynn was charged with the July 6, 1997 robbery of a Speedway station, the July 6, 1997 aggravated robbery of a Subway Sandwich Shop, and the July 10, 1997 robbery of a Clark station, all in Toledo, Ohio. The cases against appellant and Flynn proceeded to trial on March 25, 1998 at which the following evidence was presented.
At approximately 3:00 a.m. on July 6, 1997, Christy Gazda was working at the Speedway gas station at 1922 West Laskey, in Toledo, Lucas County, Ohio, when a man entered the store and asked Gazda for a pack of cigarettes. When Gazda rang up the sale, the man demanded all of the money in the cash register. Gazda felt threatened and complied with the robber's demand. When the police arrived, Gazda gave them a description of the robber. She stated that he was approximately five feet seven inches tall, about thirty-five years old and weighed about one hundred fifty to one hundred fifty-five pounds. She further described him as having a scruffy looking face and deep set blue eyes. Because the robber was wearing a baseball hat, she could not describe his hair color or the length of his hair although she believed his hair was a darker color, like a brown.
On July 6, 1997, at approximately 9:30 p.m., Angela Cope was working her usual shift at the Subway Sandwich Shop on Phillips Avenue in Toledo, Lucas County, Ohio, when a man entered the store and ordered a sandwich. When Cope went to the cash register to ring up his order, the man showed her a small knife that he held in his left hand and ordered her to give him all of the money from the cash register. After Cope complied, the robber left the store. Subsequently, Cope described the robber to the police as being in his late twenties to early thirties, having dark hair, approximately six feet tall, about one hundred seventy pounds and having acne scars on his face. In addition, Cope indicated that the robber had strange looking dark blue eyes.
On July 10, 1997, at approximately 11:45 p.m., Jason Bradish was working at the Clark gas station on Lewis Avenue in Toledo, Lucas County, Ohio. Bradish's girlfriend, Tina Hansch, was helping Bradish behind the counter when a man entered the station and stood at the back of the room, allowing other customers to go ahead of him. Finally, when the store was empty, the man approached Bradish at the register and asked if he could have a quarter for two dimes and a nickel. When Bradish opened the register drawer to give the man his change, the man demanded all of the money from the register and threatened to harm Bradish if he did not comply. The robber did not have a visible weapon but Bradish complied, handing over approximately $100 from the cash register. Thereafter, Bradish described the robber to the police as having wavy, blondish brown hair down to his neck, and very blue eyes with dark circles underneath them. He further described the robber as being approximately twenty-four to thirty years old, between five feet five inches and five feet ten inches tall, and weighing between one hundred thirty and one hundred fifty pounds. Hansch gave a similar description of the robber to the police and further stated that he had acne scars on his face.
At approximately 10:50 p.m. on July 16, 1997, Nicole Weber was working as a cashier at the In Out Mart at 2007 Sylvania Avenue, in Toledo, Lucas County, Ohio, when a man entered the store and sought to purchase three pieces of bubble gum. When Weber opened the cash register drawer, the man demanded the cash from the drawer. As the robber left the store, Joanie Koechley entered the store and held the door open for him. Weber then asked Koechley to see what kind of car the robber was getting into. Koechley exited the store and began to follow the robber. Although she did not see what car he got into, Koechley stated that she did see the robber go into the Shrader Tire and Oil parking lot. As she was following the robber, Koechley passed two adults and a child who were walking toward the In Out Mart. Koechley then returned to the store at which time Weber told her she had just been robbed by the man who Koechley followed. At the same time, the Rokicki family entered the store. Koechley testified at the trial below that after the police were called, she, Weber and the Rokicki family were waiting outside the store for the police when a van slowly drove by the market. With that, Mrs. Rokicki identified the van as the one that was parked in the Shrader parking lot and which the man leaving the market had climbed into.
The key witness against appellant Rogge in the trial below was Jamie Rokicki, the Rokicki's thirteen year old daughter. Jamie testified that on the night of July 16, 1997, she and her parents were walking to the In Out Mart when they saw a van parked in the Shrader parking lot with its "pilot" light illuminated. Jamie stated that she saw a woman sitting in the van and described the woman has having blond hair and an oval face. Jamie further testified that as the family approached the market, she saw a man walking out of the store with his head down and mumbling. Thereafter, when she and the others were waiting outside of the store for the police, she saw the same van drive slowly by the market and saw the woman, who was driving, lean toward the passenger side window and laugh.
When the police arrived at the In Out Mart, the group described the van as being two-tone brown in color with a chain around the license plate and a ladder and spare tire on the outside rear doors. In addition, Weber described the robber as being approximately six feet tall, weighing about one hundred thirty-five pounds, with short curly blondish hair and "beady" eyes. Koechley described him as being shorter than six feet and having dark circles under his eyes.
Later that night, Detective Chad Culpert of the Toledo Police Department received a description of the van and decided to go to an area of drug houses near the robbery scene to look for the van. At approximately 12:15 a.m., while sitting in his vehicle, Culpert observed a van that met the description of the van connected with the In Out Mart robbery. After following the van for a short time, Culpert notified uniformed officers who stopped the vehicle. Darrin Flynn was the driver of the van. The officers then contacted Joanie Koechley and brought her to the scene to view Flynn. Koechley positively identified Flynn as the man for whom she held the door.
Subsequently, the witnesses from all four robberies were shown a photo array which included Flynn and five other men. Cope, Hansch and Gazda positively identified Flynn as the robber. Then, Jamie Rokicki was shown a photo array of six women which included Lori Rogge. Jamie immediately identified Rogge as the woman she saw driving the van past the In Out Mart after the robbery. During the trial below, Jamie also identified Rogge in court as the woman she saw driving the van.
At the conclusion of the trial, the jury found Flynn guilty of all four robberies and Rogge guilty of the In Out Mart robbery. It is from that conviction and the subsequent sentence that Rogge now appeals.
In her first assignment of error, appellant contends that Jamie Rokicki's identification of appellant was so unreliable as to create a miscarriage of justice. Essentially, through this assignment of error, appellant challenges the credibility of the key witness against her.
It is well-established that questions regarding the credibility of witnesses are matters which are to be left to the trier of facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Although appellant did not challenge the admissibility of Rokicki's testimony at the trial below, whether a witness' identification of an accused was proper depends on the totality of the circumstances surrounding the identification. State v. Lathan (1972), 30 Ohio St.2d 92
paragraph two of the syllabus. In this light,
 "* * * reliability is the lynchpin in determining the admissibility of identification testimony * * *. The factors to be considered * * * include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Manson v. Brathwaite
(1977), 432 U.S. 98, 114.
In the present case, the evidence presented at the trial below reveals that Rokicki first viewed a blond haired woman with an oval shaped face sitting in the driver's seat in a van at the Shrader parking lot. Shortly thereafter, she saw the same woman driving the van past the In Out Mart. That woman then leaned her head toward the passenger's window and laughed. At this time, a street light shone in through the van window and Rokicki was able to see appellant's face clearly. When the police arrived, Rokicki described the woman as Caucasian with blond hair and an oval face. Six days later, Rokicki was shown a photo array that included appellant and five women with similar appearances. Rokicki immediately identified appellant as the driver of the van. In addition, Rokicki identified appellant in court as the driver of the van. Although Rokicki was a bit confused at times during appellant's counsel's cross-examination of her, her identification of appellant remained intact.
Under the totality of the circumstances, we conclude that Rokicki's identification of appellant was reliable and the first assignment of error is not well-taken.
In her second assignment of error, appellant contends that her conviction was against the manifest weight of the evidence.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, We will reverse the conviction and order a new trial only if the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice. Id.
Appellant was convicted of robbery in violation of R.C.2911.02(A)(2), which reads:
 "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
"* * *
 "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]"
In addition, R.C. 2923.03 provides:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *
"(2) Aid or abet another in committing the offense;
"* * *
 "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
Upon a review of all of the evidence in this case, we cannot find that the jury clearly lost its way in finding appellant guilty of robbery. The evidence revealed that a man, subsequently identified as Darrin Flynn, robbed the In Out Mart on the night of July 16, 1997, and that during that robbery he took a step toward the cashier, Nicole Weber, and told her he was serious. The evidence further revealed that Flynn then left the market and walked toward a parking lot where a van was waiting. Jamie Rokicki testified that she had seen a woman with blond hair and an oval face sitting in the driver's seat of that van. Soon thereafter, Rokicki and the other witnesses saw the very same van drive in front of the market and Rokicki testified that the same woman previously seen, appellant, was the driver. The evidence, therefore, supports the conclusion that appellant was guilty of complicity in the robbery of the market and thus supports the conclusion that she was guilty of robbery. The second assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
James R. Sherck, J.
Mark L. Pietrykowski, J.
CONCUR.