JOURNAL ENTRY AND OPINION
{¶ 1} Christopher Miller appeals from a judgment of the Cuyahoga County Common Pleas court entered pursuant to a jury verdict finding him guilty of intimidation, aggravated burglary, kidnapping, aggravated robbery, felonious assault and two counts of complicity to rape. The trial court sentenced him to a cumulative term of forty years incarceration. On appeal, he assigns the following errors for our review:
 {¶ 2} "Defendant was denied his right to counsel when the courtfailed to make an adequate inquiry as to defendant's dissatisfactionwith appointed counsel.
 {¶ 3} "Defendant was denied due process of law when the courtoverruled his motion to suppress the identification.
 {¶ 4} "Defendant was denied due process of law when evidence ofhis past criminal record was intentionally placed before the jury.
 {¶ 5} "Defendant was denied a fair trial when the prosecutor wasallowed to humiliate a defense witness.
 {¶ 6} "Defendant was denied due process of law when the prosecutorwas permitted to modify the definition of reasonable doubt.
 {¶ 7} "Defendant was denied due process of law when the courtmodified the definition of proof beyond a reasonable doubt.
 {¶ 8} "Defendant was denied due process of law when the courtgave an on or about instruction where defendant filed a notice ofalibi.
 {¶ 9} "Defendant was denied due process of law when the court didnot fully define the offense of intimidation.
 {¶ 10} "Defendant was denied due process of law when the courtdid not instruct in an intelligible manner all of the elements ofaggravated burglary.
 {¶ 11} "Defendant was denied due process of law when defendant wasallowed to be convicted as an aider and abettor without having anyculpable mental state.
 {¶ 12} "Defendant was denied due process of law when his motionfor judgment of acquittal was denied as to intimidation.
 {¶ 13} "Defendant was denied due process of law when the courtoverruled his motion for judgment of acquittal as to the offenseof felonious assault.
 {¶ 14} "Defendant was denied effective assistance of counsel.
 {¶ 15} "Defendant was denied due process of law when he wassubjected to maximum consecutive sentences.
 {¶ 16} "Defendant was denied due process of law when he wasdeclared to be a sexual predator."
 {¶ 17} Having reviewed the arguments of the parties and the pertinent law, we affirm the judgment of conviction and reverse the sentence imposed by the trial court. The apposite facts follow.
 {¶ 18} Two men raped and beat Lisa Bower after forcing their way into her apartment. They robbed her of a cell phone, her car charger, and her purse. Cleveland Heights police charged Miller as a result of their investigation of records from Bower's stolen cell phone. The investigation led Detective Schmitt to Nicole Head, who had received several phone calls made from the stolen cell phone by Miller. From a photo array compiled by Detective Schmitt, Bower identified Miller as one of her attackers.
 {¶ 19} Although the scientific evidence confirmed a presence of semen, the DNA did not match Miller's. Further, in his statements to police, Miller admitted to placing the cell phone in a sewer near his home when he learned the police were investigating him in connection with this incident.
 {¶ 20} A jury found Miller guilty of intimidation, aggravated burglary, kiddnapping, aggravated robbery, felonious assault, and two counts of complicity to rape. The trial court determined Miller a sexual predator and sentenced him to a cumulative term of 40 years incarceration.
 {¶ 21} In his first assigned error, Miller claims he was denied the right to counsel when the trial court failed to adequately inquire as to his dissatisfaction with his appointed attorney. Specifically, Miller informed the trial court he wanted new counsel appointed because he doubted his attorney's fairness.
 {¶ 22} "An indigent defendant has a right to competent counsel, not a right to counsel of his own choosing."[1] Further, there is no constitutional right to a "meaningful attorney-client relationship."[2]
 {¶ 23} In support of his position, Miller directs us to State v.Beranek,[3] where this court remanded for the limited purpose of conducting such an inquiry, with instructions to reenter the judgment of conviction if the allegations were unfounded.
 {¶ 24} We recognize the syllabus in State v. Deal[4] remains the law on this issue. In Deal, the Ohio Supreme Court held:
 {¶ 25} "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable."[5]
 {¶ 26} An indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as an actual conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result.[6]
 {¶ 27} "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel."[7] In the absence of such a Sixth Amendment concern, the trial court's decision to refuse substitution of counsel will be reversed only if the court has abused its discretion.[8]
 {¶ 28} Here, the trial court appointed new counsel for Miller on the original trial date of August 27, 2001. When Miller requested new counsel a second time, once again on the day of trial, he stated, without explanation, he was unsure counsel could be fair.
 {¶ 29} We do not find Miller's uncertainty of counsel's fairness to be good cause; he did not demonstrate actual conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which led to an apparently unjust result. Accordingly, Miller's first assigned error is overruled.
 {¶ 30} Miller's second assigned error addresses the trial court's denial of his motion to suppress Bower's identification of him as her assailant.
 {¶ 31} The law is clear that unreliable identification testimony is excludable under the due process standards of the United States Constitution.[9] An identification will be considered unreliable when the police procedures used to elicit the identification are unduly suggestive. However, "In order to suppress an out-of-court identification, the court must find that the procedure employed was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification."[10] In addition, it is the defendant and not the state who bears the burden of proving that the out-of-court identification was flawed.[11]
 {¶ 32} It is well settled that "reliability is the linchpin in determining the admissibility of identification testimony * * *."[12]
The Manson court set out the factors to be considered in determining the reliability of an out-of-court identification. "These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."[13]
 {¶ 33} Due process requires a court to suppress the identification of a suspect if the photo array was unnecessarily and impermissibly suggestive of the suspect's guilt and the identification was not reliable.[14]
 {¶ 34} In the case at bar, defendant argues that the photo array was impermissibly suggestive because it did not represent depictions of similar persons.
 {¶ 35} Generally, minor differences between photographs will not necessarily make them impermissibly suggestive. In State v. Green,[15]
this court held, "It is not a requirement for the use of photo arrays that all pictures shown must be of the same type. Neither is it required that they bear no differing marks or blemishes. Neither is it required that but one photo of an accused be used. The only inquiry is whether the photo or procedure used was `so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"[16]
 {¶ 36} Bower testified Detective Schmitt showed her a photo array consisting of six black males. Bower, in the presence of Schmitt and her aunt, identified Miller. Bower and Schmitt also testified Bower did not see any photographs prior to April 30, 2001 and she did not see Miller's arrest photo until after his preliminary hearing.
 {¶ 37} Regarding Bower's ability to view Miller on the night of the incident, Bower described Miller as a 5'10" light brown-toned male with big brown eyes wearing either very short hair or a black bandana and a light shirt with a gray jacket that appeared to be buttoned up halfway. The white shirt seemed to have circular writing across the front. Bower first observed Miller at the top of the stairs for approximately one minute. The second time Bower saw Miller's face was when he raped her. Bower stated the light was in front of him and was about five feet away.
 {¶ 38} Based on the testimony presented by Bower and Schmitt, we conclude the identification was not impermissibly suggestive. Accordingly, we overrule the second assigned error.
 {¶ 39} In his third assigned error, Miller claims evidence of his criminal record was intentionally and prejudicially placed before the jury when Schmitt stated, "I obtained a computer printout pertaining to the past arrest record of Christopher Miller." Miller's counsel objected and the trial court sustained the objection. Miller mischaracterizes the record Schmitt mentions; Miller suggests it was a criminal record mentioned. In fact, it was an arrest record. An arrest does not equate to a conviction. The trial court properly sustained an objection, thereby preventing the jury from hearing any specific incidents of alleged criminal conduct. Miller cannot demonstrate that he was prejudiced by Schmitt's statement. Accordingly, this assigned error is overruled.
 {¶ 40} Miller's fourth assigned error alleges the prosecutor humiliated defense witness Dwayne Collins when he asked Collins if he was a convicted felon and a crack addict.
 {¶ 41} Again, we conclude the trial court properly sustained the objection and ordered the witness not to answer. Miller has not demonstrated this line of questioning denied him a fair trial. Accordingly, this assigned error is overruled.
 {¶ 42} In his fifth assigned error, Miller argues the prosecutor modified the definition of reasonable doubt. It is clear to us from the transcript the prosecutor was not defining reasonable doubt, but rather attempting to clarify it for a juror who thought it meant "a hundred percent." Accordingly, Miller's fifth assigned error is without merit.
 {¶ 43} In assigned errors six through ten, Miller claims numerous instructions were improper. We note Miller failed to object to the jury instructions and so we must review these assigned errors under the plain error standard of review.[17] In order to warrant reversal based on plain error, the error must be such that, but for the error, the outcome of the trial would have clearly been different.[18] Such an error would not warrant reversal unless it affected the outcome of the trial or created a manifest miscarriage of justice.[19] After reviewing the instructions given by the trial court, we note each complied with the Ohio Jury Instructions and did not affect the trial's outcome. Therefore, we do not find plain error and Miller's sixth through tenth assigned errors are overruled.
 {¶ 44} Miller's eleventh and twelfth assigned errors claim insufficient evidence existed to convict him of intimidation and felonious assault.
 {¶ 45} The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the evidence of the claimed offense. In State v. Jenks,[20]
the Ohio Supreme Court stated:
 {¶ 46} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[21]
 {¶ 47} Regarding the offense of intimidation, Bower testified that her attacker hit her on the head several times with a gun, threw her against a wall and on the floor, repeatedly raped her, and kicked her in the jaw. He then told her to not call the police.
 {¶ 48} The prosecution pursued two alternative theories of felonious assault. The first version charged that he knowingly caused or attempted to cause physical harm by means of a deadly weapon.[22] The second version charged him with knowingly causing serious physical harm. Miller was found not guilty of having a firearm and claims Bower did not suffer serious physical harm.
 {¶ 49} R.C. 2901.01(A)(5)(e) defines serious physical harm to persons as "Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 50} Bower stated she was hit in the head multiple times with a gun, kicked in the jaw so hard that she could not eat solid food for several weeks, had painful bruises on her arms, leg, and face, and was raped repeatedly by two men. Dr. Marybeth Manning verified bruising and swelling of Bower's cheekbone and left elbow and tenderness to her lower back. Bower also testified the bruising increased in the days and weeks following the attack.
 {¶ 51} Consequently, the evidence viewed in a light most favorable to the State establishes beyond a reasonable doubt Miller's guilt for the offenses of intimidation and felonious assault. We overrule these assigned errors.
 {¶ 52} Miller next alleges he was denied effective assistance of counsel when his counsel failed to object to the introduction of Bower's cell phone records, when counsel failed to request an instruction on identification, and when counsel failed to object to improper prosecutorial argument during closing.
 {¶ 53} In Strickland v. Washington,[23] the court established a two-part test for considering claims of ineffective assistance of counsel:
 {¶ 54} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense."[24]
 {¶ 55} Further, in State v. Bradley,[25] the court held that in order to show prejudice, the defendant must demonstrate a reasonable probability exists that, absent counsel's error, the result of the trial would have been different.
 {¶ 56} Pursuant to the test set forth in Strickland, we conclude none of the alleged omissions Miller relies on rise to the level of prejudicial error. In light of the overwhelming evidence introduced against Miller, the outcome of the trial would not have been different even if his counsel performed differently. Therefore, this assigned error is overruled.
 {¶ 57} Miller next attacks the maximum and consecutive nature of his sentence.
 {¶ 58} In order to impose a maximum sentence, a trial court must make the findings found in R.C. 2929.14(C), which states:
 {¶ 59} "Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 60} Additionally, when imposing the maximum sentence, the trial court must fulfill the requirements of R.C. 2929.19(B)(2)(e), which directs the trial court to state its reasons for imposing the maximum prison term if the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree.
 {¶ 61} Here, the trial court imposed maximum terms based on its conclusion that Miller committed the "worst form" of the offenses of kidnapping and rape. Thus, the court complied with the requirements R.C.2929.14(E) in imposing Miller maximum sentences. For its reasons, the trial court stated the crime caused tremendous emotional and physical harm to the victim, Miller failed to show any remorse or accountability for the crime, and the crime was sexually and violently motivated. Additionally, the crime involved preying upon an entirely innocent victim. Therefore, the trial court properly sentenced Miller to maximum sentences.
 {¶ 62} Miller also complains the trial court failed to make the necessary findings and give its reasons when it sentenced him to consecutive sentences. When the court imposes consecutive sentences, it must look to R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c).
 {¶ 63} R.C. 2929.14(E)(4) sets forth the factors for imposition of consecutive or multiple prison terms. Further, the trial court is required to find that the offender's behavior fits into one of the categories listed in R.C. 2929.14(E)(4)(a), (b), or (c) that the offenses were committed awaiting trial or sentence, or the harm caused is so great that no single term adequately reflects the seriousness of the offender's conduct or that consecutive sentences are necessary to protect the public from future crime. In addition, the trial court must give its reason for imposing consecutive sentences.[26]
 {¶ 64} A review of the transcript reveals the trial court made a finding that consecutive sentences were necessary to protect the public and that the harm in this instance was so great and unusual that a single term does not adequately reflect the seriousness of the offender's conduct. However, notably absent is a finding that the sentence is not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.
 {¶ 65} We realize a sentencing court is not required to use the exact language of the statute, as long as it is clear from the record that the court made the required findings.[27] However, this record is devoid of a disproportionality finding. Accordingly, while we overrule the portion of this assigned error addressing the maximum nature of Miller's sentence, we conclude the trial court erred as to the consecutive sentence. This assigned error is sustained and the matter remanded for resentencing only.
 {¶ 66} In his final assigned error, Miller claims the trial court erred when it classified him as a sexual predator.
 {¶ 67} To warrant a sexual predator classification, the State must prove by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses.[28]
 {¶ 68} In reviewing a trial court's determination as to a sexual offender classification, we must examine the record to determine whether the evidence satisfies the requisite degree of proof.[29] In making a determination as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including those listed in R.C.2950.09(B)(2). In this case, the court considered Miller's age, his criminal record, the victim's age, the absence of mental illness, and the nature of the conduct. The court found that during the commission of the offense, Miller exhibited extreme cruelty and threatened the victim. Based on these factors, and the evidence produced at trial, the court found there was "an extreme likelihood, a substantial likelihood this defendant would re-offend * * *." We conclude the trial court did not err in classifying Miller as a sexual predator and overrule this assigned error.
 {¶ 69} Judgment affirmed in part, reversed in part and remanded to the trial court for re-sentencing in accordance with this opinion.
This cause is affirmed in part, reversed in part and remanded for resentencing.
It is ordered that appellee and appellant share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., CONCURS IN JUDGMENT ONLY; COLLEEN CONWAY COONEY, J., DISSENTS IN PART. (SEE ATTACHED CONCURRING AND DISSENTING OPINION.)
[1] State v. Blakenship (1995), 102 Ohio App.3d 534, 558, citingThurston v. Maxwell (1965), 30 Ohio St.2d 92, 93.
[2] Morris v. Slappy (1983), 461 U.S. 1, 13-14.
[3] (Dec. 14, 2000), Cuyahoga App. No. 76260.
[4] (1969), 17 Ohio St.2d 17.
[5] Id.
[6] Blankenship at 558, citing State v. Pruitt (1984), 18 Ohio App.3d 50,57.
[7] State v. Coleman (1988), 37 Ohio St.3d 286, paragraph four of the syllabus.
[8] State v. Pruitt (1984), 18 Ohio App.3d 50, 57.
[9] State v. Mosley, Cuyahoga App. No. 79463, 2002-Ohio-1101 citingState v. Salwan (May 30, 1996), Cuyahoga App. No. 68713.
[10] State v. Harris (Sept. 29, 1994), Cuyahoga App. No. 65681.
[11] Id. at 9.
[12] Manson v. Brathwaite (1977), 432 U.S. 98, 114.
[13] Id.
[14] Neil v. Biggers (1972), 409 U.S. 188, 199; State v. Waddy
(1992), 63 Ohio St.3d 424.
[15] (1990), 67 Ohio App.3d 72.
[16] Id. at 79, quoting Simmons v. United States (1968), 390 U.S. 377,384.
[17] State v. Waddell (1996), 75 Ohio St.3d 163, 166; State v. Joseph
(1995), 73 Ohio St.3d 450, 455, reconsideration denied (1995),74 Ohio St.3d 1423, certiorari denied (1996), 516 U.S. 1178.
[18] Joseph; Waddell at 166.
[19] State v. Mitchell (1989), 60 Ohio App.3d 106, 108, appeal dismissed (1990), 49 Ohio St.3d 709. See, also, State v. Sims (1982),3 Ohio App.3d 331.
[20] (1991), 61 Ohio St.3d 259.
[21] Id. at paragraph two of the syllabus.
[22] R.C. 2903.11(A)(2).
[23] (1984), 466 U.S. 668.
[24] Id. at 687.
[25] (1989), 42 Ohio St.3d 136.
[26] See R.C. 2929.19(B)(2)(c).
[27] See State v. Williams, Cuyahoga App. 79273, 2002-Ohio-503, citing State v. Hollander (2001), 144 Ohio App.3d 565.
[28] R.C. 2950.01(E) and 2950.09(B)(3); State v. Eppinger (2001),91 Ohio St.3d 158, 163.
[29] State v. Schiebel (1990), 55 Ohio St.3d 71, 74.