[Cite as *State v. Burns*, 2017-Ohio-8248.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27386 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-484 |
| | : | |
| LASTARZA A. BURNS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of October, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

HILARY LERMAN, Atty. Reg. No. 0029975, 249 Wyoming Street, Dayton, Ohio 45409
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Lastarza Burns appeals from his conviction and sentence for aggravated robbery, kidnapping and two counts of abduction. He contends that the trial court erred by failing to suppress evidence of a pre-trial identification. He further contends that the trial court erred in sentencing.

{¶ 2} We conclude that the trial court did not err by denying Burns' motion to suppress or by denying his request for merger at sentencing. Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 3} Hope Doss was employed at Moraine Auto Sales located on North Dixie Drive in Montgomery County. As part of her duties, Doss was involved with car sales as well as taking in payments on cars. On February 1, 2016, Doss was the only employee working when a man entered the building and asked her about a car. As Doss was preparing to escort the man to the assembled cars, she observed him look out to the parking lot at another man. The first man pulled a gun and the second man, later identified as Burns, entered the building.

{¶ 4} Burns asked where money could be found while his accomplice forced Doss into a car seat located in the corner of the business's front room. While Doss was in the chair, the gunman used his knee to hit her several times in the chest resulting in a bruise to her chest. The gunman also hit Doss on her head with the gun several times causing a bruising and lump over her left eyebrow. After Burns found an envelope containing $400, the men took Doss down a hallway to the back room of the business. Once in the

back, they told her to sit down on the floor and to give them her purse. The men subsequently told her to lie on the floor on her stomach. While on her stomach, Doss heard the men rummaging around the room. They subsequently tied her up, and she heard them continue to rummage around. The men took her purse, told her to remain still and left the building. After the men left, Doss was able to remove her restraints, and, upon doing so, called 911. When the police arrived, she gave them a folder containing information on a Chevy Trailblazer she claimed was associated with Burns. Following an investigation, Burns was arrested.[1]

{¶ 5} On March 8, 2016, Burns was indicted on one count of aggravated robbery (deadly weapon) with a firearm specification, one count of kidnapping (felony or flight), one count of abduction (restrain) and one count of abduction (remove). He filed a motion to suppress all pre-trial identification evidence.

{¶ 6} At the suppression hearing, Montgomery County Sheriff's Detective Kent Saunders testified that he has performed over three hundred photographic array lineups during his more than 20-year career. He testified that he used the JusticeWeb computer program to gather photographs for the purpose of creating a photographic lineup for Doss to view. Saunders testified that he prefers JusticeWeb over another available system because it uses similar backgrounds for the photographs and because it uses booking photographs with the individuals in street clothes rather than jail-issued clothing.

{¶ 7} Saunders testified he used Burns' physical characteristics, such as height, weight, eye color, race, sex, age and facial hair to generate photographs of men with

---

[1] The record is silent concerning whether Burns' accomplice was arrested and prosecuted.

similar appearances. Saunders testified that it was difficult to create an array because Burns has a unique tattoo by his left eye. He testified that once pictures were generated and selected, the computer program randomly arranged five photos onto a page along with the photo of Burns. He arranged for another detective, Robert Schumacher, to administer the photo lineup.

{¶ 8} Schumacher testified that he did not have any knowledge of the case or the suspect, and that Saunders did not inform him which photograph depicted Burns. He testified that he met with Doss outside of Saunders' presence. Schumacher testified that he read, verbatim, the instructions concerning Doss' review of the photographic lineup. According to Schumacher, Doss identified Burns within a matter of seconds. Doss indicated that she was 80% certain that the person she identified was the perpetrator.

{¶ 9} Following the hearing, the trial court found that the all of the men depicted in the array are African-American with medium to light complexions. Each man is wearing street clothes. The trial court noted that they all are "broad-shouldered and thick chested," and that each man has facial hair on the top lip and along the chin. The court also found that while none of the tattoos are exact matches, they are not so noticeably different as to be considered unduly suggestive. The trial court overruled the motion.

{¶ 10} The case proceeded to trial in September 2016. However, the jury was unable to reach a verdict. The matter was re-tried in November 2016.

{¶ 11} Doss testified that she recognized Burns as a customer who had been in the business approximately 15 to 18 times in the past to make payments on a maroon Chevrolet Trailblazer. She testified that the vehicle was repossessed by Moraine Auto Sales in September of 2015. At the time it was repossessed, Doss had observed Burns

in the parking lot of the business. She testified that he was "really angry" and yelling at the business manager, as well as at police who had been called to the scene. She testified that during the commission of the instant offenses Burns said, "I told you I'd be back."

{¶ 12} The manager of Moraine Auto Sales testified that he was involved in the repossession of the Chevy. He testified that Burns became irate and began to make threats. Specifically, Burns threatened to "burn the place down." Burns also stated that he would be back, and that he would get his money back "one way or the other."

{¶ 13} Montgomery County Sheriff's Deputy Kevin Kerschner was on the scene at the time of the repossession. He verified that Burns was very angry about the repossession.

{¶ 14} The jury returned a guilty verdict on all charges. A sentencing hearing was conducted on November 28, 2016. The trial court merged the aggravated robbery and kidnapping charges and the State elected to proceed on the aggravated robbery charge. The court sentenced Burns to a mandatory four year prison term for the aggravated robbery, and to twelve month prison sentences on each of the abduction convictions. All of these terms were ordered to be served concurrently with each other. The trial court further sentenced Burns to a mandatory three year prison term for the the firearm specification and ordered that it be served consecutively to the aggravated robbery offense for a total prison term of seven years. Burns appeals.

## II. Photographic Array Was Not Unduly Suggestive

{¶ 15} The first assignment of error asserted by Burns states:

THE PHOTO LINEUP USED TO IDENTIFY DEFENDANT-APPELLANT WAS IMPERMISSIVELY [SIC] SUGGESTIVE

{¶ 16} Burns claims that the photo array was unduly suggestive and thus the trial court erred in overruling his motion to suppress. Burns' unduly suggestive argument is premised upon his contention that no other individual in the array had a facial tattoo similar to his, thereby causing his photograph to stand out.

{¶ 17} A pre-trial identification derived from inappropriately suggestive procedures causing a likelihood of misidentification violates a defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Courts apply a two-step test in determining the admissibility of challenged identification testimony: (1) the defendant must demonstrate that the identification procedure was unnecessarily suggestive; and (2) if the defendant meets this burden, the court must consider whether the procedure, under the totality of the circumstances, was so unduly suggestive that it created a likelihood of irreparable mistaken identification. *State v. Wills*, 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist.1997), citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *State v. Garner*, 74 Ohio St.3d 49, 61, 656 N.E.2d 623 (1995).

{¶ 18} R.C. 2933.83 governs the administration of photographic lineups and is aimed at preventing the use of unnecessarily suggestive procedures. The statute requires specific procedures for conducting photographic array lineups. For example, the statute provides for the use of a person who does not know the suspect's identity (a "blind administrator") to present the photo array to a witness. R.C. 2933.83(A)(2). The administrator must inform the witness that the suspect may, or may not, be in the lineup.

R.C. 2933.83(B)(5). In this case, there is no evidence or claim that the police failed to comply with R.C. 2933.83. Instead, Burns' argument hinges upon the fact that his facial tattoo is unique among the other photos presented in the array.

{¶ 19} The photo array is before us and we have examined it. The array contains six color photographs of men who appear to be of approximately the same age with the same hair color and similar complexions. They all have facial hair and some type of tattoo near the left eye. All of the individuals are wearing different casual attire.

{¶ 20} Upon review of the record, we cannot conclude that the photo lineup is unduly suggestives. This court has held that a "computerized method of creating photospreads avoids most potential unfairness and almost any claim that the lineup was suggestive." *State v. Beckham*, 2d Dist. Montgomery No. 19544, 2003–Ohio–3837, ¶ 12, citing *State v. Beddow*, 2d Dist. Montgomery Nos. 16197 & 16198, 1998 WL 126876 (Mar. 20, 1998). Moreover, "[a] defendant in a lineup need not be surrounded by people nearly identical in appearance." *State v. Davis*, 76 Ohio St.3d 107, 112, 666 N.E.2d 1099 (1996). We agree with the trial court that the difference in the tattoos is not so striking as to be unduly suggestive. We therefore conclude that the trial court did not err in finding that the lineup was not suggestive.

{¶ 21} Further, this court has followed the holding of the Supreme Court of Ohio that "although an identification procedure is suggestive, as long as the identification is reliable, it is admissible." *State v. Chaffin*, 2d Dist. Montgomery No. 24241, 2012–Ohio–634, ¶ 20, citing *State v. Barker*, 53 Ohio St.2d 135, 142, 372 N.E.2d 1324 (1978). In *State v. Lathan*, 30 Ohio St.2d 92, 99, 282 N.E.2d 574 (1972), the Supreme Court of Ohio held that when an identification procedure is unduly suggestive the State's burden of proof

is to establish the reliability of eyewitness testimony by clear and convincing evidence. Therefore, the question, assuming the identification procedure in this case was inappropriately suggestive, is whether the State met its burden of proving, by clear and convincing evidence, the reliability of the eyewitness identification under the totality of the circumstances.

{¶ 22} It is beyond dispute that Doss knew Burns prior to the incident. She informed the police that she had seen him on numerous occasions in the store, including during the incident when the Chevy was repossessed. She was able to observe him when he entered the car dealership, and she recognized him. Following the crime, Doss gave the police the folder with information on the Chevy associated with Burns. She immediately identified him in the array.

{¶ 23} Therefore, even if the identification procedure utilized was overly suggestive, the identification made by Doss is sufficiently reliable to overcome any claim by Burns that his due process rights were denied.

{¶ 24} Accordingly, the first assignment of error is overruled.

### III. Abduction Counts Not Allied Offenses of Similar Import

{¶ 25} Burns' second assignment of error is as follows:

THE ABDUCTION RESTRAIN COUNT AND THE ABDUCTION REMOVAL

COUNT WERE ALLIED OFFENSES OF SIMILAR IMPORT AND NEEDED

TO BE MERGED

{¶ 26} Burns contends that the two abduction convictions should have been merged for purposes of sentencing. He argues that both offenses were committed as

part of the same action to "place [Doss] in a position where she could not inform people of the robbery."

{¶ 27} R.C. 2941.25, Ohio's allied offense statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 28} In *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892, the Ohio Supreme Court clarified the applicable standard when determining whether offenses merge as allied offenses of similar import:

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must

ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff* at ¶ 30–31.

{¶ 29} Burns was convicted of abduction (remove) in violaton of R.C. 2905.02(A)(1) which states in pertinent part:

(A) No person, without privilege to do so, shall knowingly do any of the following:

(1) By force or threat, remove another from the place where the other person is found[.]

Burns was also convicted of an abduction (restrain) count in violation of R.C. 2905.02(A)(2) which states in pertinent part:

(A) No person, without privilege to do so, shall knowingly do any of the following:

(2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]

{¶ 30} A defendant, under R.C. 2941.25, has the burden of establishing his entitlement to merger. *State v. Sullivan*, 2d Dist. Montgomery No. 23948, 2012-Ohio-4317, ¶ 13; *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). Under the

facts of this case, we conclude that Burns did not meet this burden. He merely argues that the two acts of abduction were one offense designed to prevent Doss from notifying anyone of the offenses. It could just as easily be argued that Doss was removed to the back room in order to search for more money, and that after the search was complete, she was tied up in order to allow the men time to get away from the scene.

{¶ 31} We conclude that the record supports a finding, as argued by the State, that the abduction (remove) offense was committed when Burns and his accomplice forced Doss into the back room of the dealership. Once in the back room, the offense was completed. The men then made Doss sit on the floor, they took her purse and then they made her lie on her stomach while they rummaged around the room. The men finally tied up Doss. We further conclude that the record before us supports a finding, again as argued by the State, that the abduction (restrain) offense occurred when Burns and his accomplice forced Doss to the floor culminating in Doss being tied up. The offenses were committed separately, and, as such, the offenses are not allied offenses of similar import requiring merger.

{¶ 32} The second assignment of error is overruled.

## IV. Conclusion

{¶ 33} Both of Burns' assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, P.J. and DONOVAN, J., concur.



Copies mailed to:

Mathias H. Heck, Jr.
Alice B. Peters
Hilary Lerman
Hon. Timothy N. O'Connell