DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant appeals his conviction for bank robbery and three other counts of aggravated robbery with two gun specifications entered on jury verdicts in the Lucas County Court of Common Pleas. For the reasons that follow, we affirm, in part, and reverse, in part. *Page 2 
 {¶ 2} On August 23, 2004, an African-American male wearing a wig, baseball cap and large tinted glasses entered a Toledo Cash Advance store. The man pointed what appeared to be a gun wrapped in cloth at the office manager, gesturing to the counter where the money was kept. He said, "You have three seconds." The manager opened the cash drawer and handed over a little over $200. The robber fled.
 {¶ 3} A week later, an African-American male wearing a shoulder length wig came into a Toledo BP station, jumped the counter and grabbed the attendant, pointing a gun at her head. The robber pushed the attendant to the cash register and ordered her to open it. When she did, he grabbed the money, slightly under $200, ordered the attendant into a back room and fled.
 {¶ 4} On September 26, 2004, a gunman wearing a hooded sweatshirt and large tinted glasses entered a Toledo Sunoco station, telling the attendant that she had ten seconds to open the cash drawer. The man took the bills in the cash drawer, under $100, and left, telling the attendant to, "have a good night."
 {¶ 5} On September 30, 2004, an African-American male carrying a handbag and wearing a blue dress, a wig and tennis shoes entered a South Toledo branch of Sky Bank. With a curved object wrapped in a sock in his right hand, the robber leaped the counter, pushed aside the teller and emptied the contents of her drawer into his handbag. Following this, he jumped on the counter, stood, turned and told everyone to, "Have a good day." He then fled with more than $ 1,000. *Page 3 
 {¶ 6} Police and FBI investigating the bank robbery found a sheet of paper in the secure area behind the bank's counter. It was a worker document for one Andrea Starks. Sky Bank ascertained that Andrea Starks was not a customer. A review of bank security photographs revealed that when the robber entered the bank he was carrying a piece of paper. When he left, the paper was no longer visible.
 {¶ 7} Andrea Starks is the spouse of appellant, Verdell Starks. Investigators believed that appellant matched the description given by witnesses in all four robberies. Police assembled a photo array, containing pictures of six men, including appellant, and showed the array to witnesses. Each of the witnesses picked appellant from the array.
 {¶ 8} Appellant was arrested and, in an interrogation with the FBI, confessed to the bank robbery. On October 14, 2004, appellant was named in an indictment charging two counts of aggravated robbery with firearm specifications and two counts of robbery. The indictment included the Sunoco station robbery for which he was eventually convicted. On January 28, 2005, a second indictment was handed down, charging appellant with an additional four counts of aggravated robbery with firearm specifications and four counts of robbery. Included in this indictment were the Sky Bank, Cash Advance, and BP robberies. These cases were consolidated for trial.
 {¶ 9} Appellant pled not guilty and moved to suppress witness identification and his statements to police. He also moved to sever the bank robbery case from the rest of the charges. The trial court denied appellant's suppression motion, but granted severance. *Page 4 
A subsequent motion to sever the remaining armed robbery charges from each other was denied.
 {¶ 10} Following a jury trial, appellant was convicted of the bank robbery. Before trial for the remaining armed robbery charges, appellant dismissed his counsel and elected to proceed as his own trial counsel, with a court-appointed backup counsel to provide aid. Following another jury trial, appellant was found guilty of three counts of aggravated robbery with two firearm specifications.
 {¶ 11} The trial court denied appellant's motion for a new trial and, following a presentence investigation, sentenced him to a four-year period of incarceration for the bank robbery, to be served consecutively to five years for the Sunoco robbery, five years for the BP robbery and two consecutive three-year terms for the firearm specifications. An additional concurrent five-year sentence was imposed for the Cash Advance robbery. The remaining counts in the indictment were dismissed prior to or during trial.
 {¶ 12} From this judgment of conviction, appellant now appeals, setting forth the following ten assignments of error:
 {¶ 13} "ASSIGNMENT OF ERROR I: The trial court erred by not granting Stark's Rule 29 motions for judgment of acquittal at both trials because there was insufficient evidence to prove each element of the crimes charged.
 {¶ 14} "ASSIGNMENT OF ERROR II: The trial court erred in overruling Stark's pretrial motion to suppress the witnesses' identification because the process was *Page 5 
prejudicially and irreparably tainted by the process used, including a second array that was never produced.
 {¶ 15} "ASSIGNMENT OF ERROR III: Stark's trial counsel provided ineffective assistance of counsel by failing to pursue discovery and object to improper evidence.
 {¶ 16} "ASSIGNMENT OF ERROR IV: The trial court verdicts were against the manifest weight of the evidence.
 {¶ 17} "ASSIGNMENT OF ERROR V: Stark's constitutional right to a Speedy Trial was violated because he was in custody for more than 90 days before his trial began.
 {¶ 18} "ASSIGNMENT OF ERROR VI: The trial court abused its discretion by only ordering that the Sky Bank robbery be tried separately given additional factual differences between the remaining counts.
 {¶ 19} "ASSIGNMENT OF ERROR VII: The trial court should have ordered Stark's confession inadmissible because it could not provide evidence that a crime had occurred independent of his confession.
 {¶ 20} "ASSIGNMENT OF ERROR VIII: The trial court abused its discretion with its rulings on Stark's motion for new counsel, and for allowing Quinn to testify as an expert witness.
 {¶ 21} "ASSIGNMENT OF ERROR IX: The prosecutor made comments during the trial, and during closing arguments that resulted in an improper comment on the evidence or vouching. *Page 6 
 {¶ 22} "ASSIGNMENT OF ERROR X: Stark's sentence violated the Ex Post Facto Clause of the United States Constitution."
 {¶ 23} We shall reserve consideration of appellant's first and fourth assignments of error.
 I. Suppression {¶ 24} In his second assignment of error, appellant asserts that the trial court erred when it refused to suppress witness identification.
 {¶ 25} Appellate review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. State v. Long
(1998), 127 Ohio App.3d 328, 332. On questions of fact, the court acts as the trier of fact and its findings will not be disturbed if supported by competent credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. Matters of law are reviewed de novo. State v. Hackett,171 Ohio App.3d 235, 239, 2007-Ohio-1865, ¶ 9.
 {¶ 26} Appellant maintains that the witness identification of him was tainted by the presentation of multiple photo arrays, because one of the witnesses picked someone else out of an earlier array and that a police statement that an arrest had been made unwarrantedly suggested that the individual sought would be in the array. Appellant also asserts that, because he was seen in jail garb by two of the witnesses at the suppression hearing, this tainted their subsequent in-court identification of him and should not have been permitted. *Page 7 
 {¶ 27} In support of his position, appellant cites Neil v.Biggers (1972), 409 U.S. 188, and State v. Lathan (1972),30 Ohio St.2d 92. Biggers involved a police show up of a suspect to a rape victim;Lathan was a robbery suspect denied counsel before being identified in a police lineup.
 {¶ 28} In Lathan, the Supreme Court of Ohio held, at paragraph one of the syllabus, that even when a "critical pretrial confrontation" was illegal, a subsequent in-court identification was proper, "* * * unless it can be established by clear and convincing evidence that such in court identification had an independent origin or that error in its admission was harmless." In determining whether identification had an independent origin we are directed to view the totality of the circumstances. Id. at paragraph two of the syllabus. Only if such circumstances reveal "* * * that the witness' opportunity at the time of the crime to observe her attacker was meager, and the circumstances surrounding a later improper `police confrontation' between the witness and the suspect were so highly suggestive as to the identity of the suspect as to create a grave opportunity for a mistaken identification * * *" should such identification be excluded. Id. at paragraph three of the syllabus.
 {¶ 29} Biggers too emphasizes examination of all the circumstances, including the witness' opportunity to view and observe the perpetrator. The case also suggests that consideration should be given to the degree of attention the witness employed when observing the subject, the accuracy of the witness' description, the level of the witness' *Page 8 
certainty in identification and the length of time between the crime and the confrontation. Biggers at 200.
 {¶ 30} Biggers and Lathan apply most directly to the chance view of appellant in jail garb by witnesses waiting to testify at the suppression hearing. Appellant's counsel brought the incident to the court's attention and the court interviewed the witnesses. Most notable during the interviews was the testimony of one of the witnesses who was startled to see appellant being brought down the hall, because she immediately recognized him as the man who robbed her.
 {¶ 31} In this matter, given the opportunity of the witnesses to view appellant during the robberies, the brevity of time between the crime and identification and the certitude of the witnesses in their identification of appellant before the incident, we cannot find error in the court's denial of a motion to suppress on the grounds of an inappropriate sighting.
 {¶ 32} With respect to the photo array identification, witness identification at trial following a pretrial identification by photograph will be set aside, "* * * only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384.
 {¶ 33} In this matter, whether or not witnesses were shown more than one array is immaterial. The testimony of the police and the witnesses established that there was no attempt to suggest a choice out of the six options on each array. That the witnesses did *Page 9 
not choose anyone from prior arrays only reinforces their certainty of appellant. Even though one witness believed one or two of the earlier pictures were "possibles," the same witness later conclusively identified appellant from the photo array and at trial. A police statement that the picture of a suspect was among those in the array, was not impermissibly suggestive. It seems not unreasonable for a witness to assume that any time police show a photo array, one of the pictures there is of an individual of police interest. Moreover, the descriptions of the criminal given by all of the witnesses materially matched the appearance of appellant.
 {¶ 34} Given this, we cannot say the trial court erred in denying appellant's motion to suppress. Accordingly, appellant's second assignment of error is not well-taken.
 II. Ineffective Assistance of Counsel {¶ 35} In his third of assignment of error, appellant maintains that he was denied effective assistance of counsel.
 {¶ 36} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary *Page 10 
process that renders the result unreliable." Strickland v.Washington (1984), 466 U.S. 668, 687. Accord State v. Smith (1985),17 Ohio St.3d 98, 100.
 {¶ 37} Scrutiny of counsel's performance must be deferential.Strickland v. Washington at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is the defendant's. State v. Smith, supra. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v.Washington at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. See id. at 694. See, also, State v. Lott (1990),51 Ohio St.3d 160, for Ohio's adoption of the Strickland test.
 {¶ 38} Appellant's ineffective assistance of counsel claim goes only to his bank robbery trial. He represented himself in the other trial. One who represents himself cannot later claim that he was prejudiced by its own deficient performance. State v. Taylor, 98 Ohio St.3d 27, 41,2002-Ohio-7017, ¶ 81-83.
 {¶ 39} Appellant asserts that his counsel for the bank robbery case did not aggressively pursue discovery, and neither objected to improper questions nor improper comments during closing arguments.
 {¶ 40} Appellant fails to direct our attention to any specific portion of closing argument which he deems objectionable. The only other specific testimony he relates that should have been objected to was a police witness' reference to him having been *Page 11 
arrested on outstanding warrants. "A failure to object to damaging testimony may indicate no more than that counsel wishes not to draw attention to such testimony. Absent evidence to the contrary, we will presume this tactic to be trial strategy." State v. Hickle, 6th Dist. No. OT-03-034, 2004-Ohio-5250, ¶ 46.
 {¶ 41} With respect to discovery, appellant's complaints are directed to vaunted attempts to obtain a security camera tape from the bank robbery. Still pictures were produced, but the tape itself was not produced until a week before the trial. This occurred only after appellant's trial counsel filed a motion to compel. Apparently, the tape had been kept in the possession of bank security officers.
 {¶ 42} The state responds that trial counsel was afforded open file discovery and that the location of the missing tape was not known to the prosecution or police until just before it was produced.
 {¶ 43} In our view, counsel filed a motion to compel discovery, as he should have. Thus, his conduct was not deficient. Moreover, no prejudice occurred to appellant from this delay. Accordingly, the appellant's third assignment of error is not well-taken.
 III. Speedy Trial {¶ 44} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee an accused the right to a speedy trial. To determine whether a delay is so excessive as to offend the constitutional right to a speedy trial, courts conduct an analysis, balancing (1) the length of the delay, (2) the reason for the delay, (3) whether and how the defendant asserted the right, and (4) whether prejudice *Page 12 
to the defendant resulted. Barker v. Wingo (1972), 407 U.S. 514,530-533; State v. Taylor, supra at 33, 2002-Ohio-7017, ¶ 38.
 {¶ 45} In Ohio, the right to a speedy trial is also statutorily guaranteed. R.C. 2945.71 (C) (2) requires that the state bring a felony defendant to trial within 270 days of his arrest. If the accused is held in jail in lieu of bail during this period, each day counts as three in computing time. R.C. 2745.71 (E). This time may be extended if the accused is unavailable, incompetent to stand trial or without counsel. Time is also expanded for, inter alia, delay due to the accused's motions, during any period of a continuance granted on a defendant's motion, or for any reasonable continuance granted for other reasons. R.C. 2945.72.
 {¶ 46} A felony charge must be dismissed on a defendant's motion if he or she is not brought to trial within the time provided in R.C. 2945.71
and 2945.72. R.C. 2945.73 (B). Failure to move to dismiss prior to or at the commencement of trial, however, prevents a defendant from raising the issue on appeal. Taylor, supra, 2002-Ohio-7017, ¶ 37; State v.Thompson (1994), 97 Ohio App.3d 183, 186.
 {¶ 47} In his fifth assignment of error, appellant contends he was denied his right to a speedy trial.
 {¶ 48} Appellant was arrested on October 4, 2004, and indicted ten days later. Counsel was appointed on October 21. On November 17, appellant moved to suppress the testimony of identifying witnesses. He subsequently filed numerous other motions, including one to sever. The court eventually ruled on the suppression motion on July 26, *Page 13 
2005. The bank robbery trial began on August 29, 2005. Appellant was found guilty the next day. At the time of his conviction following the bank robbery trial, appellant had several unresolved motions pending on the remaining counts. On September 8, 2005, the court ruled on appellant's motion to sever and set a trial date, with counsel for appellant expressly agreeing with the court that an October trial date was within the requirements of the statutory speedy trial rule. Trial on the remaining charges commenced on October 17, 2005. After his conviction at the second trial, appellant moved to dismiss on speedy trial grounds.
 {¶ 49} From November 14, 2004, until the onset of his trial, appellant had one motion or another pending before the court. Since R.C. 2945.72
(E) expressly tolls statutory speedy trial requirements for any motion made or action instituted by the accused, the statute was tolled for the entire time until the beginning of his second trial. Moreover, appellant's counsel expressly waived any speedy trial issues and appellant waived review of such issues by untimely filing his motion to dismiss. With respect to constitutional speedy trial: the delay was not excessive, it was precipitated by appellant's own motions, he failed to timely assert his right and he made no showing of prejudice. Thus, appellant's fifth assignment of error is not well-taken.
 IV. Joinder/Severance {¶ 50} In his sixth assignment of error, appellant asserts that the trial court abused its discretion when it refused to sever trials of the remaining three robberies. *Page 14 
 {¶ 51} A court may join together for trial charges contained in two or more indictments if the defendants or the offenses could have originally been joined in a single indictment or information. Crim.R. 13. Offenses of the same or similar characteristics, based on the same act, upon multiple connected acts or constituting parts of a common scheme or course of criminal conduct may be joined in a single indictment. Crim.R. 8(A). A defendant may seek relief from joinder which is unfairly prejudicial. Crim.R. 14. The decision of whether to join or sever the trial of multiple offenses rests within the sound discretion of the court and will not be disturbed absent an abuse of discretion. State v.Strobel (1988), 51 Ohio App.3d 31, 32. An abuse of discretion is more than a mistake of law or an error in judgment, the term connotes that the courts attitude is arbitrary, unreasonable or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 52} The common thread in all the charges initiated against appellant was that witnesses identified him as the person who robbed them. These, then, are clearly offenses which could have been brought in a single indictment or information and the trial court properly consolidated them.
 {¶ 53} Once offenses are properly joined, to obtain severance, the defendant has the burden of showing that joinder will operate to his or her prejudice. State v. Roberts (1980), 62 Ohio St.2d 170, 175.
 {¶ 54} Appellant points to differences in witness descriptions and witness accounts of the robber's method of operation as differentiating the gas station-cash store robberies *Page 15 
from each other. He suggests that the differences between the robberies were greater than the similarities. His argument is unpersuasive. The evidence reveals a robber with a penchant for costumes and disguises and smart exiting remarks. Each of the victims identified appellant as the robber. The facts presented were straightforward and uncomplicated. Thus, we must concur with the trial court that appellant failed to show prejudice in the joinder. See State v. Brooks (1989), 44 Ohio St.3d 185,194-195.
 {¶ 55} Accordingly, appellant's sixth assignment of error is not well-taken.
 V. Corpus Delicti {¶ 56} In his seventh assignment of error, appellant argues that the trial court should have found his bank robbery confession inadmissible because the state failed to prove the corpus delicti of the crime. Appellant insists that no one at the bank could positively identify him; no forensic evidence tied him to the bank. No evidence existed that he ever possessed the dye pack reported taken from the bank. The only thing linking him to the bank, aside from his confession, appellant insists, is a piece of paper with his wife's name on it.
 {¶ 57} "[I]n Ohio * * * there must be some evidence outside of a confession tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. * * *"State v. Maranda (1916), 94 Ohio St. 364, paragraph two of the syllabus. *Page 16 
 {¶ 58} Appellant, however, is confused as to what constitutes the corpus delicti. The term refers to evidence, not that a defendant committed a crime, but whether any crime was committed at all. It is not about "who," but "what." The term refers to the "body of the crime," ordinarily including "* * *the act and the criminal agency of the act." Black's Law Dictionary (6 Ed.Rev.1990), 344, citing State v.Edwards (1976), 49 Ohio St.2d 31.
 {¶ 59} The origins of the rule are explained in Maranda, at 370:
 {¶ 60} "This doctrine touching corpus delicti is of ancient origin and was born out of great caution by the courts, in consideration of certain cases of homicide wherein it had turned out that by reason of a failure of the government to prove the death of the person charged as having been murdered it so happened that such person sometimes survived the person accused as his murderer. Therefore, the rule that there must be some evidence tending to prove the fact that death had actually ensued; which was later followed by an additional requirement of some evidence that that death was brought about by some criminal agency."
 {¶ 61} Put simply, you cannot convict someone who confesses to a murder if you cannot independently prove that someone was murdered. Or, in the present matter, you cannot convict someone who confesses to bank robbery unless you can prove a bank was robbed.
 {¶ 62} At trial, the evidence was that on the afternoon of September 30, 2004, a man in a blue dress took money from Sky Bank without permission or right to do so. *Page 17 
Thus, the corpus delicti of a bank robbery was demonstrated and appellant's confession was admissible.
 {¶ 63} Accordingly, appellant's seventh assignment of error is not well-taken.
 VI. New Counsel/Testimony {¶ 64} On July 21, 2005, approximately a month before the bank robbery trial was to begin, appellant submitted a letter to the court enumerating numerous complaints about the diligence of his trial counsel and requesting that new counsel be appointed. The trial court treated this letter as a pro se motion to remove counsel and conducted a full hearing on the matter.
 {¶ 65} During the hearing, the trial court addressed each of appellant's grievances with counsel and concluded they were without merit. The court denied appellant's request to replace counsel. In the first part of his eighth assignment of error, appellant contends that this decision was erroneous.
 {¶ 66} A defendant with appointed counsel has no right to a particular attorney and, therefore, must demonstrate "good cause" to warrant substitution of counsel. State v. Cowens (1999), 87 Ohio St.3d 68,72, citing United States v. Iles (C.A.6, 1990), 906 F.2d 1122, 1130. A trial court may deny the request and require the proceedings to continue with the present assigned counsel if the defendant's complaint is unsubstantiated or unreasonable. State v. Deal (1969), 17 Ohio St.2d 17, syllabus. The trial court's decision in this regard is reviewed under an abuse of discretion standard. Cowens at 73. *Page 18 
 {¶ 67} Here, the trial court patiently addressed each of appellant's concerns about his counsel's performance and found all but one of the complaints wholly unsubstantiated. The court apparently concluded that removal of counsel at this late date over a single misunderstanding would be unreasonable. Such a decision was certainly within the court's discretion.
 {¶ 68} In the second portion of his eighth assignment of error, appellant asserts that the court erred in allowing the investigating detective to testify as an expert witness. Appellant has not directed us to the specific portion of the transcript that is the source of his complaint. In both trials, Detective Quinn testified that no usable fingerprints were found, but that in his experience this was not an unusual occurrence. In the bank robbery trial, Quinn testified that finding fingerprints was, "* * * actually kind of rare." In the other trial, he testified, "* * * a lot of times we don't often get prints. But sometimes we luck up and do."
 {¶ 69} The state responds that Detective Quinn's testimony was not as an expert, but merely an observation based on his 23 years as a police officer and six years as a detective.
 {¶ 70} Expert testimony is "[o]pinion evidence of some person who possesses special skill or knowledge in some science, profession or business which is not common to the average man and which is possessed by the expert by reason of his special study or experience." Black's Law Dictionary, supra, 578; see, also, Evid.R. 701. *Page 19 
 {¶ 71} "A witness may testify as an expert if all of the following apply:
 {¶ 72} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 73} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 74} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *." Evid.R. 702.
 {¶ 75} Detective Quinn's testimony seems less an opinion than a report of his personal observations over a period of years as a police officer. Even if his testimony were considered "expert," it would appear that Detective Quinn would be qualified to deliver such testimony under the rule. In either event, the trial court acted within its discretion in overruling appellant's objection.
 {¶ 76} Appellant also asserts that it was a violation of his confrontation rights for the state not to have called as witnesses the scientific investigation unit investigators who did not find his fingerprints at any crime scene. This is a patently absurd assertion. A criminal defendant has only a right to be "* * * confronted with the witnesses against him * * *. Sixth Amendment to the United States Constitution. See, also, Section 10, Article I of the Ohio Constitution. No inculpatory forensic evidence was presented against appellant; therefore, no right to confront forensic scientists arose.
 {¶ 77} Appellant's eighth assignment of error is not well-taken. *Page 20 
 VII. Prosecutorial Misconduct {¶ 78} In his ninth assignment of error, appellant complains that during both trials the prosecutor made statements during trial and at closing which appellant broadly characterizes as "prosecutorial misconduct." Appellant concedes that, since he objected to none of these remarks, review of these statements must be based on the standard of plain error. State v. Cunningham, 105 Ohio St.3d 197, 212,2004-Ohio-7007, ¶ 82; State v. Slagle (1992), 65 Ohio St.3d 597, 604. Plain error occurs when an error, defect or irregularity, "* * * affect[s] substantial rights * * *." Evid.R. 52 (B). "[A] reviewing court must ask * * * whether the alleged error substantially affected the outcome of the trial." Slagle at 605.
 {¶ 79} We have carefully reviewed each of the prosecutorial statements of which appellant complains and conclude that none individually nor as an aggregate would have affected the outcome of either trial. Indeed, most were fair comment or argument for which objection at trial would not have been sustained.
 {¶ 80} Accordingly, appellant's ninth assignment of error is not well-taken.
 VIII. Crim.R. 29 — Manifest Weight {¶ 81} In his first assignment of error, appellant asserts that the trial court erred in both trials by denying his Crim.R. 29 motion for a judgment of acquittal. In his fourth assignment of error, he maintains that the verdicts at both trials were against the manifest weight of the evidence. *Page 21 
 {¶ 82} A motion for a judgment of acquittal, pursuant to Crim.R. 29, is judged by the same standard as for whether a verdict is supported by sufficient evidence. State v. Tenace, 109 Ohio St.3d 255, 260,2006-Ohio-2417, ¶ 36. A verdict may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J., concurring); State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley
(1978), 56 Ohio St.2d 169; State v. Barns (1986), 25 Ohio St.3d 203.
 {¶ 83} In the bank robbery trial, appellant's confession was introduced into evidence. In the other trial, a parade of witnesses identified appellant as the individual who robbed them. This is evidence which, if believed, would prove the elements of the *Page 22 
offenses charged beyond a reasonable doubt. Thus, the trial court did not err in denying either of appellant's Crim.R. 29 motions.
 {¶ 84} Moreover, we have thoroughly examined the evidence presented in both trials and find no suggestion that the juries lost their way or that justice would require a new trial. Accordingly, appellant's first and fourth assignments of error are not well-taken.
 VIII. Sentencing {¶ 85} In his final assignment of error, appellant suggests that his sentence was an ex post facto application of the sentencing law. Appellant states that he is aware that this proposition of law was rejected by this court in State v. Wood, 6th Dist. No L-05-1420,2006-Ohio-4910, but raises this assignment to preserve the issue.
 {¶ 86} In Wood, the sentencing court imposed non-minimum, consecutive sentences on statutory findings the Supreme Court of Ohio later found unconstitutional in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, paragraphs one and three of the syllabus. Wood argued that he was entitled to resentencing pursuant to Foster, but contended that application of the Foster remedy of severing the offending portion of the statute would constitute an ex post facto application of the law. This could only be avoided, Wood argued, by imposing nonconsecutive, minimum sentences. We concluded that, indeed, Wood's sentencing was improper and remanded the matter to the trial court for resentencing.Wood at ¶ 7. We rejected the ex post facto argument. Id at ¶ 8. *Page 23 
 {¶ 87} This case is materially the same as Wood. Appellant was sentenced prior to the announcement of Foster upon findings later found constitutionally offensive. For this reason, pursuant toFoster, at ¶ 105, his sentence must be vacated and the matter remanded for resentencing. We continue to hold that the remedy expressed inFoster is not a violation of ex post facto principles. Wood at ¶ 7; see, also, State v. Coleman, 6th Dist. No. S-06-023, 2007-Ohio-448, ¶ 19.
 {¶ 88} Accordingly appellants' tenth assignment of error is well-taken to the extent that appellant's sentencing was founded on inappropriate findings. In all other respects it is not well-taken.
 {¶ 89} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded to said court for resentencing in conformity withState v. Foster. Appellant and appellee are ordered to share equally the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense in preparation of the record, fees allowed by law, and the fee for filing this appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 24 
 Peter M. Handwork, J. Arlene Singer, J., Thomas J. Osowik, J. CONCUR. *Page 1