[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Kennedy*, Slip Opinion No. 2024-Ohio-5728.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5728

THE STATE OF OHIO, APPELLANT, *v.* KENNEDY, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Kennedy*, Slip Opinion No. 2024-Ohio-5728.]**

*Criminal law—Judicial release—R.C. 2929.20—Judicial-release eligibility is determined separately for each stated prison term, informed by the aggregate of all nonmandatory prison terms imposed—Judgment reversed and cause remanded.*

(No. 2023-1299—Submitted July 24, 2024—Decided December 10, 2024.)

APPEAL from the Court of Appeals for Franklin County,

Nos. 22AP-534 and 22AP-536, 2023-Ohio-3078.

_____

STEWART, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, and DETERS, JJ., joined.  DONNELLY, J., concurred in judgment only, with an opinion.

**STEWART, J.**

{¶ 1} In this discretionary appeal from a split decision of the Tenth District Court of Appeals, we are asked to decide whether the court of appeals properly determined that appellee, Chelsie Kennedy, was eligible for judicial release under R.C. 2929.20. We conclude that the Tenth District correctly determined that former R.C. 2929.20(C)(5), 2018 Am.Sub.S.B. No. 201,[1] applies to Kennedy based on the aggregate of the nonmandatory prison terms to which she was subject. However, because the appellate court did not conduct a complete inquiry regarding whether Kennedy had served the requisite amount of her stated prison terms before she filed her motion for judicial release, as set forth in R.C. 2929.20(C)(4) and (5), we reverse the court of appeals' judgment affirming the trial court's entry granting judicial release and remand this case to the trial court for further proceedings to determine whether Kennedy completed the prescribed waiting period.

**Facts and Procedural History**

{¶ 2} In 2014, Kennedy pled guilty to robbery charges in three different cases in the Franklin County Court of Common Pleas: one case assigned to one judge and two cases assigned to a different judge. Kennedy was sentenced as follows:

- Case No. 14CR-769 – the trial court (Judge 1) sentenced Kennedy to an aggregate nine-years of incarceration (one year of which was a mandatory sentence for a firearm specification);

- Case No. 14CR-514 – the trial court (Judge 2) sentenced Kennedy to five years of incarceration, to be served consecutively to 14CR-769, but concurrently to Case No. 14 CR-834;

---

1. The relevant language of former R.C. 2929.20(A),(B), and (C)(1) through (5), 2018 Am.Sub.S.B. No. 201, which was in effect when Kennedy filed her motion for judicial release, remains in the current version of the law, but the subsections have been renumbered in the current version as R.C. 2929.20(C)(1)(a) through (e). All citations herein to R.C. 2929.20(A),(B), and (C) are to the 2018 Am.Sub.S.B. No. 201 version unless otherwise indicated.

- 14CR-834 – the trial court (Judge 2) sentenced Kennedy to an aggregate six years of incarceration (one year of which was a mandatory sentence for a firearm specification), to be served concurrently with the sentence imposed in Case No. 14CR-514, but consecutively to the sentence imposed in Case No. 14CR-769.

**{¶ 3}** Kennedy filed a motion for judicial release in each case. The judge in case number 14CR-769 denied her motion. Relevant to the matter before us are the motions filed in case numbers 14CR-514 and 14CR-834. In the motions filed in 14CR-514 and 14CR-834, Kennedy argued she was already eligible for judicial release under R.C. 2929.20(C)(3) because she had served more than four years of her aggregated sentence. The State opposed the motion, arguing that Kennedy had not yet completed the nine-year sentence imposed in 14CR-769, and that Kennedy's eligibility for judicial release should be separately determined by "two sentencing courts," the one that imposed her sentence in 14CR-769 and the one that imposed her sentence in 14CR-514 and 14CR-834. Kennedy filed a supplemental memorandum in support of her motion, contending that she was eligible for judicial release even if the State's argument applied to her circumstance, because she had served more than half the aggregated 15-year prison term imposed in all three cases. *See* R.C. 2929.20(C)(4) and (5). In response, the State noted that Kennedy had separately been denied judicial release in 14CR-769 and, again, had not completed her nine-year prison term in that case. As a result, the State argued, to be eligible for judicial release under R.C. 2929.20(C)(3), the law requires Kennedy to serve at least five years of the concurrent sentences imposed in 14CR-514 and 14CR-834 *after* completing the sentence in 14CR-769.

**{¶ 4}** The trial court granted Kennedy's motion for judicial release in 14CR-514 and 14CR-834. Specifically, the trial court found that Kennedy was an "eligible offender" under R.C. 2929.20(B) and (C)(4) and (5) because the sentences imposed in 14CR-514 and 14CR-834 "constitute[d] the sentence of a single 'sentencing

court,' " R.C. 2929.20(C). Having found that Kennedy was an "eligible offender," the trial court granted Kennedy judicial release because she had served more than eight years in prison and based on Kennedy's conduct in prison and the court's consideration of the seriousness and recidivism factors under R.C. 2929.20(J). The trial court suspended Kennedy's sentences in 14CR-514 and 14CR-834 and placed Kennedy on community control for three-years, to begin at the conclusion of Kennedy's sentence in 14CR-769. The trial court expressly noted that its decision had "no impact on the sentence imposed" in 14CR-769.

**{¶ 5}** The State appealed the judgments in14CR-514 and 14CR-834. After consolidating the appeals, the Tenth District Court of Appeals affirmed in a split decision. 2023-Ohio-3078, ¶ 42 (10th Dist.). We accepted the State's discretionary appeal on the following proposition of law: "Judicial-release eligibility is determined separately for each stated prison term, and a sentencing court can grant judicial release only on the stated prison term imposed by that court." *See* 2024-Ohio-163.

## Analysis

**{¶ 6}** The State's proposition of law presents two separate issues. The first half of the proposition states, "Judicial-release eligibility is determined separately for each stated prison term," and the second half states, "[A] sentencing court can grant judicial release only on the stated prison term imposed by that court." The second half of the proposition is not at issue here. As the court of appeals' decision recognized, "[T]he trial court's decision to grant judicial release in case Nos. 14CR-514 and 14CR-834 did not impact the sentence imposed in case No. 14CR-769— over which the granting trial court judge was not presiding . . . ." 2023-Ohio-3078 at ¶ 35 (10th Dist.). And the trial court's entry granting judicial release was clear: "The Court notes this decision ONLY applies to Case Nos. 14CR-514 and 14CR-834. This decision has no impact on the sentence imposed in 14CR-769, currently assigned to Franklin County Judge David Young." (Capitalization in original.)

4

Thus, the trial court here granted judicial release only on the prison terms imposed in case Nos. 14CR-514 and 14CR-834. Accordingly, we focus our analysis on the first half of the State's proposition of law.

{¶ 7} Under R.C. 2929.20(C), an "eligible offender may file a motion for judicial release with the sentencing court within" a certain defined time as delineated in R.C. 2929.20(C)(1) through (5). This statute instructs an eligible offender where and when to file the motion. According to R.C. 2929.20(A)(1)(a), an "eligible offender" is someone who "is serving a stated prison term that includes one or more nonmandatory prison terms" and does not fall under one of the excluded categories of offenders enumerated in R.C. 2929.20(A)(1)(b). A "stated prison term" is "the prison term, mandatory prison term, or combination of all prison terms and mandatory prison terms imposed by the sentencing court." R.C. 2929.01(FF)(1). Although "sentencing court" is not defined in the statute, we find its meaning plain and ordinary enough to conclude that the sentencing court is the court that imposed the sentence for which the offender is seeking judicial release.

{¶ 8} Kennedy meets the definition of an eligible offender under R.C. 2929.20(A)(1). She filed a motion for judicial release in Case Nos. 14CR-514 and 14CR-834, and each of the sentences in those cases included a nonmandatory prison term. Thus, the relevant question is whether Kennedy has filed the judicial-release motions after the applicable waiting period described in R.C. 2929.20(C)(1) through (5).

{¶ 9} Each subsection of R.C. 2929.20(C) describes two separate calculations a court must conduct to determine when an offender may move for judicial release. R.C. 2929.20(C)(1) states, "*If the aggregated nonmandatory prison term or terms is less than two years*, the eligible offender may file the motion at any time after the offender is delivered to a state correctional institution or, if the prison term includes a mandatory prison term or terms, at any time after the expiration of all mandatory prison terms." (Emphasis added.) R.C. 2929.20(C)(2)

through (5) contain similar language. The sentencing court must first determine the length of the "aggregated nonmandatory prison term or terms." That calculation determines which subsection of R.C. 2929.20(C) applies to the offender.

{¶ 10} R.C. 2929.20(A)(6) defines "aggregated nonmandatory prison term" as "the aggregate of the following: (a) [a]ll nonmandatory definite prison terms; (b) [w]ith respect to any non-life felony indefinite prison term, all nonmandatory minimum prison terms imposed as part of the non-life felony indefinite prison term or terms." Notably, there is no reference in this definition to the "sentencing court," or even to a "stated prison term" (which, as described above, is defined as the prison term that the sentencing court has imposed). Instead, the statute plainly defines "aggregated nonmandatory prison term or terms" as the aggregate of "all" nonmandatory definite prison terms. R.C. 2929.20(A)(6)(a). Because "'all' means all," *Watkins v. Dept. of Youth Servs.*, 2015-Ohio-1776, ¶ 16, we find neither ambiguity nor limitation in the meaning of "aggregated nonmandatory prison term."

{¶ 11} The State argues that the only nonmandatory prison terms that a court should aggregate to determine which subsection of R.C. 2929.20(C) applies are the aggregated nonmandatory prison terms issued by the court in 14CR-514 and 14-CR-834, which are, in the State's view, one sentencing court. But the plain language of the statute contains no such limitation. The phrase "stated prison term" occurs in other parts of R.C. 2929.20, but not in the definition of "aggregated nonmandatory prison term" in R.C. 2929.20(A)(6).

{¶ 12} Significantly, in 2011, the General Assembly removed from the statute the phrase "stated prison term" to determine which waiting period applied to an offender seeking judicial release. *See* 2011 Am.Sub.H.B. No. 86, effective September 30, 2011 ("H.B. 86"). Before 2011, the calculation to determine which waiting period applied depended on the "stated prison term," not the "aggregated nonmandatory prison term or terms." *See* 2008 Am.Sub.H.B. No. 30. Specifically,

6

the pre-2011 version of R.C. 2929.20(C)(1) stated, "If the stated prison term is less than two years, the eligible offender may file the motion not earlier than thirty days after the offender is delivered to a state correctional institution." *Id.* Because the statutory definition of "stated prison term" is the prison term or terms "imposed by the sentencing court," R.C. 2929.01(FF), the use of "stated prison term" in R.C. 2929.20 before 2011 required the sentencing court to look only at what it had imposed.[2] Since the 2011 amendment, the statute requires the court to look at the "aggregated nonmandatory prison term or terms," the definition for which includes no reference to "stated prison term," or, by extension, the "sentencing court." Thus, the 2011 amendment compels the conclusion that the General Assembly intended to change what a court should consider when determining the waiting period for an offender seeking judicial release. "'In construing a statute, this court's duty is to give effect to the General Assembly's intent as expressed in the language if enacted.' " *State v. Bryant*, 2020-Ohio-1041, ¶ 22, quoting *State v. Braden*, 2019-Ohio-4204, ¶ 17.

{¶ 13} Giving effect to the General Assembly's use of the phrase "aggregated nonmandatory prison term or terms" in place of "stated prison term" in R.C. 2929.20(C), we conclude that the calculation required to determine the subsection of R.C. 2929.20(C) that is applicable to an offender who seeks judicial release, is exactly what the statute says that term means: the aggregate of *all* nonmandatory prison terms that the offender is serving. As a result, a court must consider any nonmandatory prison term the offender is serving, regardless of which court sentenced the offender or in which court the offender has filed the judicial-release motion at issue.

---

2. The pre-2011 version of R.C. 2929.20 was in effect in *State v. Smith,* 2004-Ohio-3573 (2d Dist.), a case cited by both parties. Given that the version of the statute applicable in *Smith* used different language to describe how to determine which section of R.C. 2929.20(C) to apply to an offender's motion for judicial release, we do not find that case instructive here.

**{¶ 14}** Taking together the sentences in the three cases to which Kennedy was subject when she filed the relevant judicial-release motions in 14CR-514 and 14CR-834, we note that the aggregated nonmandatory prison terms amounted to 13 years total (an eight-year nonmandatory prison term in 14CR-769 to be served consecutively to concurrent five-year nonmandatory prison terms in 14CR-514 and 14CR-834). Accordingly, R.C. 2929.20(C)(5) applies to Kennedy's eligibility determination because that section addresses an "aggregated nonmandatory prison term or terms [of] more than ten years."

**{¶ 15}** Now that we know which subsection of R.C. 2929.20(C) applies, we turn to the second calculation: to determine the specific waiting period after which Kennedy may move the sentencing court for judicial release. R.C. 2929.20(C)(5) states: "If the aggregated nonmandatory prison term or terms is more than ten years, the eligible offender may file the motion *not earlier than the later of the date on which the offender has served one-half of the offender's stated prison term or the date specified in division (C)(4)*." (Emphasis added.) R.C. 2929.20(C)(4) states: "[T]he eligible offender may file the motion not earlier than the date on which the eligible offender has served five years of the offender's stated prison term or, if the prison term includes a mandatory prison term or terms, *not earlier than five years after the expiration of all mandatory prison terms*." (Emphasis added.)

**{¶ 16}** Unlike the phrase "aggregated nonmandatory prison term or terms" discussed above, the relevant calculation to determine the specific waiting period in R.C. 2929.20(C)(4) and (5) expressly refers to an offender's "stated prison term." Again, "stated prison term" is defined as "the prison term, mandatory prison term, or combination of all prison terms and mandatory prison terms *imposed by the sentencing court*." (Emphasis added.) R.C. 2929.01(FF)(1). Therefore, this calculation is limited to how much time the offender has served of the specific sentence or sentences imposed in the case in which the offender is seeking judicial release.

8

**{¶ 17}** Notably, the waiting period described in R.C. 2929.20(C)(1) and (2) relies on different language. For example, R.C. 2929.20(C)(1) states: "If the aggregated nonmandatory prison term or terms is less than two years, the eligible offender may file the motion at any time *after the offender is delivered to a state correctional institution* or, if the prison term includes a mandatory prison term or terms, at any time after the expiration of all mandatory prison terms." (Emphasis added.) The reliance in this subsection on the date on which an offender is delivered to a correctional institution stands in contrast to R.C. 2929.20(C)(4) and (5), which require the court to look at how much of a stated prison term the offender has served.

**{¶ 18}** Kennedy's argument appears to ignore this distinction. Her argument suggests that her three sentences are the "stated prison term" and that any time served on any of the three sentences may be used to calculate the waiting period for filing a motion for judicial release with regard to any of the three sentences. This interpretation removes from R.C. 2929.20(C)(4) and (5) the reference to the "stated prison term," because the definition of "stated prison term" refers to the sentence imposed by the sentencing court, which is the sentence that is the subject of the judicial-release motion. It also undermines any consecutive-sentencing directive that might have been imposed as part of an offender's sentences (such as the sentences imposed on Kennedy in 14CR-514 and 14CR-834). Kennedy's argument might prevail if the applicable section of R.C. 2929.20(C) described the relevant waiting period in terms of the date on which the offender was delivered to a state correctional institution, as R.C. 2929.20(C)(1) and (2) do. But we presume the General Assembly to have acted intentionally by choosing different phrasing in R.C. 2929.20(C)(4) and (5), which are the subsections relevant here.

**{¶ 19}** Because the meaning of "stated prison term" depends on the meaning of the term "sentencing court," see R.C. 2929.01(FF)(1), different

interpretations of "sentencing court" have led to some confusion of the meaning of "stated prison term." Kennedy was sentenced in three cases presided over by two judges on the Franklin County Court of Common Pleas. Under the State's view and that of the dissenting judge in the court of appeals, there are two sentencing courts in Kennedy's three cases: one sentencing court before a judge in 14CR-769, and another sentencing court before a different judge in 14CR-514 and 14CR-834. The trial court also found that "the instant cases [14CR-514 and 14CR-834] constitute the sentence of a single "sentencing court" under R.C. 2929.20(B) and (C). . . ."[3] But the 14CR-514 and 14CR-834 were not consolidated for sentencing. And the judicial-release motions were separately filed in each of those cases. As previously mentioned, although there is no statutory definition of "sentencing court," we rely on the plain and ordinary meaning of the words used and conclude that a "sentencing court" is the court that imposed the sentence in the case for which the offender has moved for judicial release. Here, although the trial court considered Kennedy's judicial-release motions in 14CR-514 and 14CR-834 together, each of those cases contains its own "stated prison term," and must be treated separately when calculating whether Kennedy has waited the required time to file for judicial release, particularly given that the sentence in 14CR-834 includes a mandatory one-year prison term for a firearm specification and may be subject to

_____

3. These interpretations of "sentencing court" are particularly puzzling when considering that Ohio's 88 counties include some common pleas courts with multiple judges and some with a single judge. Under the State's theory, an offender sentenced in multiple cases in a single-judge county would be able to aggregate any nonmandatory prison terms imposed in those multiple cases to determine judicial-release eligibility and also aggregate those sentences to determine time served on a "stated prison term." But an offender in a multijudge court who is sentenced in multiple cases before different judges would *not* be able to aggregate the nonmandatory sentences imposed or have those sentences be considered part of the relevant "stated prison term." Although we need not consider the absurdity of these disparate outcomes on the meaning of the statute given that the plain language of the phrase "sentencing court" is clear and unambiguous, we note nonetheless that the State's interpretation appears to ignore how its approach would create different outcomes throughout the State.

a waiting period different from the waiting period required for the sentence imposed in 14CR-514, which did not contain a firearm specification.

{¶ 20} We next determine whether the courts below correctly calculated whether Kennedy had served enough of her stated prison terms in 14CR-514 and 14CR-834 to satisfy the relevant waiting period described in R.C. 2929.20(C)(5) before filing her judicial-release motions in those cases. However, it appears from the court of appeals' decision that the trial court did not conduct a complete inquiry into this question. The court of appeals concluded that the State had not demonstrated that Kennedy was ineligible for judicial release due to unserved time on her mandatory firearm specification, 2023-Ohio-3078 at ¶ 33 (10th Dist.), but it did not specify how it concluded that Kennedy had served sufficient time. The trial court noted that Kennedy had already served eight years in prison, but it is not clear on which term the court considered that time to have been served. The parties, in their briefs to this court, have focused on the calculation of the "aggregated nonmandatory prison term or terms" and not on the specific time served on the relevant stated prison terms. For example, the State argues in its brief that Kennedy's judicial-release eligibility should be determined by "R.C. 2929.20(C)(1)(c)," which was formerly R.C. 2929.20(C)(3), but it stops short of explaining how this subsection specifically applies to the sentences imposed in 14CR-514 and 14CR-834. Kennedy argues that R.C. 2929.20(C)(5) applies to her judicial-release eligibility, as we conclude here, but also argues that the relevant waiting period was satisfied while Kennedy served the sentence in 14CR-769, an argument we reject. Given the absence of analysis by the lower courts and the lack of specificity in the arguments from the parties on which to base our review, we conclude that the best course is to remand the cause to the trial court to determine, in accordance with this opinion, whether Kennedy was eligible to file her motions for judicial release in 14CR-514 and 14CR-834.

**Conclusion**

**{¶ 21}** For the foregoing reasons, we accept the State's proposition to the extent it is consistent with this opinion. Judicial-release eligibility is determined separately for each stated prison term—the prison term imposed in the case in which the judicial release motion was filed—so long as the applicable subsection of R.C. 2929.20(C) is informed by the aggregate of all of the nonmandatory prison term or terms to which the offender is subject. Accordingly, we reverse the judgment of the Tenth District Court of Appeals and remand this matter to the trial court for further proceedings.

Judgment reversed<br>and case remanded.

―――――――――――――――

**DONNELLY, J., concurring in judgment only.**

**{¶ 22}** I reluctantly concur in the majority's judgment. I do not think the General Assembly meant to say what it said in the judicial-release statute, R.C. 2929.20, but I recognize that I have a duty to follow the text of the statute. I write separately not to criticize the majority's analysis but to criticize the mess that the General Assembly has made of the judicial-release statute. The statute is a hodgepodge of terms that renders it confusing at best, absurd at worst, and arbitrary no matter which way you slice it.

**BACKGROUND**

**{¶ 23}** The appellee in this case, Chelsie Kennedy, faced robbery-related charges in three separate cases that were filed within a three-week period in January and February 2014. She entered guilty pleas in all three cases, and she received an aggregate prison term of 15 years, with two of those years being mandatory. In October 2021, Kennedy moved for judicial release in all three of her cases.

**{¶ 24}** The motions for judicial release tell the story of a young life ruined by an addiction to prescription pain medication that turned into an addiction to illicit

street drugs. Kennedy went from pursuing a master's degree to feeding her drug habit with money she earned from acting as a getaway driver for men who were experienced robbers. According to Kennedy, two of the four men who actually committed the robberies received four-year prison terms and were released long before Kennedy filed her motions and the other two men received ten-year prison terms and were scheduled for release in January 2024.

{¶ 25} The judge who had presided over one of Kennedy's three criminal cases denied her motion for judicial release. Judge Chris Brown, who had presided over the other two cases, granted a hearing on Kennedy's motions and ultimately granted judicial release. While making no excuses for Kennedy's conduct, Judge Brown recognized that Kennedy was not the primary offender in the crimes and that her drug addiction had been her primary motivating factor for her actions. Further, in light of the many years prior to the crimes that Kennedy had led a law-abiding life, her genuine expressions of remorse, and her many efforts to participate in educational and other enriching programs offered by the Ohio Department of Rehabilitation and Correction, Judge Brown concluded that judicial release was appropriate.

## ANALYSIS

{¶ 26} Although the facts weigh clearly in favor of Kennedy's release, the law is anything but clear on when Kennedy may file a motion for judicial release. It would be reasonable for the average person to think that Kennedy was serving a 15-year prison term, of which 13 years were nonmandatory, for a group of offenses that were closely related in time and circumstances. From the applicable portion of the judicial-release statute, former R.C. 2929.20(C)(5), 2018 Am.Sub.S.B. No. 201,[4] it would be reasonable to think that Kennedy was allowed to file her motions

---

4. As the majority notes, majority opinion, ¶ 1, fn. 1, the language of former R.C. 2929.20(C)(1) through (5), 2018 Am.Sub.S.B. No. 201, has been renumbered in the current version as R.C. 2929.20(C)(1)(a) through (e). All citations herein are to the 2018 Am.Sub.S.B. No. 201 version.

for judicial release when she did, i.e., after she served over seven and a half years in prison.

**{¶ 27}** It's bad enough that Kennedy had to wait years and years before even having the chance to prove that she was a good candidate for release. But it gets worse. Because Kennedy's offenses were charged in three separate cases and assigned to two separate judges, and because the statute describes Kennedy's time in prison by using multiple, legally distinct terms like "aggregated nonmandatory prison term," "prison term," and "stated prison term," we have to tie ourselves in knots to figure out when Kennedy can ask for judicial release and from whom.

**{¶ 28}** As the majority notes, the judicial-release statute, R.C. 2929.20, categorizes the different waiting periods for requesting judicial release based on an offender's "aggregated nonmandatory prison term or terms," R.C. 2929.20(C)(1) through (5). Majority opinion, ¶ 7, 9. The categories involve aggregated nonmandatory prison terms of (1) less than two years, (2) at least two but less than five years, (3) exactly five years, (4) more than five but not more than ten years, and (5) more than ten years. R.C. 2929.20(C). Once you determine which category applies, the aggregated nonmandatory prison term is irrelevant to the waiting period itself. The first two subdivisions, (1) and (2), tie the waiting period primarily to the date that the offender "is delivered" to prison, while subdivisions (3), (4), and (5) tie the waiting period primarily to the date that the offender has served a certain amount of her "stated prison term." Specifically, subdivisions (3) and (4) require service of four and five years of a stated prison term, respectively, and subdivision (5) requires service of either five years or one-half of the stated prison term, whichever is longer. All the categories alternatively tie the waiting period to the date of "the expiration of all mandatory prison terms" that were included in "the prison term."

**{¶ 29}** The term "stated prison term" means the combination of prison terms imposed by "the sentencing court." R.C. 2929.01(FF)(1). Not "a" sentencing

court, not sentencing "courts," but "the sentencing court." Because of the word "the" or the absence of the letter "s" in R.C. 2929.01(FF)(1), the majority is forced to conclude that the waiting periods in R.C. 2929.20(C)(3) through (5) apply to each sentence imposed by "the sentencing court" under an individual case number. I cannot quibble with the majority's dissection and grammatical analysis of the technical language in R.C. 2929.01 and 2929.20. But given how common it is for an offender to serve time in prison for offenses charged in more than one case, I find it ridiculous that we need to resort to the finer points of grammar to figure out what on earth the General Assembly expects trial courts to do when considering motions for judicial release. In fact, no matter which way you slice it, the judicial-release statute makes little sense at all.

{¶ 30} To begin with, it is ridiculous for R.C. 2929.20(C)(3) through (5) to require courts to use the aggregate of an offender's nonmandatory sentences to determine which waiting period applies to the offender, only to then apply that waiting period separately to each one of the offender's individual stated prison terms. There are plenty of scenarios in which each stated prison term will be shorter than the waiting period. For example, if a person is tried in five separate cases and her stated prison term in each case is a one-year nonmandatory prison term, to be served consecutively to all other prison terms, her aggregated nonmandatory prison term would be five years, and therefore the offender would be subject to the four-year waiting period in R.C. 2929.20(C)(3). The offender would somehow have to serve four years on each one-year stated prison term before being allowed to apply for judicial release in each case.

{¶ 31} The application of aggregated-prison-term waiting periods to nonaggregated stated prison terms allows for arbitrary and disproportionate outcomes for offenders depending on whether their cases are consolidated. Other offenders involved in strings of robberies like the robberies in this appeal will often face charges in one consolidated case. *See*, *e.g.*, *State v. Clemonts*, 2019-Ohio-

15

1425, ¶ 2 (10th Dist.) (four cases involving robbery and drug possession consolidated and resolved by guilty plea); *State v. Starks*, 2007-Ohio-4897, ¶ 8 (6th Dist.) (four robberies charged in two cases consolidated for trial); *State v. Johnson*, 2002-Ohio-1661, ¶ 2 (8th Dist.) (four cases involving robbery and drug possession consolidated for trial). The offenders' stated prison terms in each of those cases would be a single number, just like the aggregated nonmandatory prison terms. But in Kennedy's case, because her string of robberies remained in three separate cases, she has three different stated prison terms. The date that a person may apply for judicial release should not hinge on what might essentially be an administrative decision whether to consolidate cases that are closely related in time and nature.

{¶ 32} The statutory waiting periods strike me as arbitrary even when they are applied to offenders who are serving single stated prison terms. For example, if an offender's total stated prison term consists of a nonmandatory term of four years and 11 months, the offender may apply for release about six months after being delivered to prison. R.C. 2929.20(C)(2). That means the offender can potentially be released after serving just over 10 percent of her sentence. If we add just one month to that stated prison term, making it five years, the offender can't apply for release until she serves at least four years of her prison term, R.C. 2929.20(C)(3), which is 80 percent of her sentence. If we add one more month to the sentence, making it five years and one month, the offender can't apply for release until she serves at least five years of her prison term, R.C. 2929.20(C)(4), which is over 98 percent of her sentence. But then if we add another five years, or even another 95 years, the offender is still potentially subject to the same five-year waiting period under R.C. 2929.20(C)(4) and (5), making it possible for her to apply for judicial release after serving a much smaller portion of her sentence. Because the statute drastically increases the waiting periods around the five-year mark, only to reduce the proportional waiting period for much longer sentences, the waiting

16

periods do not seem to bear a logical relationship to the seriousness of the offenses or to an offender's capacity for reform.

{¶ 33} Even if the statutory waiting periods had a more logical relationship to the duration of nonmandatory prison terms, I would find that the bright-line waiting periods themselves are arbitrary. An inmate serving a nonmandatory prison term of five years and one month is prohibited from filing for judicial release until she has served at least five years, R.C. 2929.20(C)(4), no matter how many rehabilitative programs she has completed or how much evidence of rehabilitation exists. When judges impose prison terms, those terms are served at facilities under the supervision of the Ohio Department of Rehabilitation and Correction, not the Ohio Department of Vengeance and Neglect. Either the agency's name should be changed to one that is not a lie, or we should start treating those in the custody of the Ohio Department of Rehabilitation and Correction as people who are capable of rehabilitation and who can be released when they establish that they are rehabilitated.

{¶ 34} The late Judge Raymond Headen of the Eighth District Court of Appeals shared my concern regarding excessive prison terms. He noted that keeping people in prison longer than necessary inflicts needless costs onto our society. Those costs are paid by Ohio taxpayers, whose money is wasted on the incarceration of people who have been rehabilitated, by Ohio businesses that are short on employees, and by Ohio families that are separated. *See* Court News Ohio, Maloney, *Striving toward Justice with Data* (Aug. 2020), available at https://www.courtnewsohio.gov/inDepth/2020/August/default.asp (accessed Dec. 23, 2024) [https://perma.cc/MHG2-R78T]. Judge Headen mentioned to me during his tenure on the court of appeals that we should change the name of the process in R.C. 2929.20 from "judicial release" to something like "earned early release." I think that is an excellent idea. Such a name would make clear that the behavior of the offender during her incarceration is a central factor that is considered in the

decision whether to grant early release, would make clear the goals of the statute, and would reduce the stigma that appears to be associated with granting motions for judicial release.

**{¶ 35}** Judges appropriately place great value on their discretion to make decisions that they find most appropriate based on the evidence before them. The restrictions that currently exist in the judicial-release statute only hamper that discretion. The restrictive nature of the statute only adds to the current culture in which judges entertain motions for judicial release far less often than they should. And because the restrictions are so complicated, this court is forced yet again to wade through the hyper-legislated swamp of the criminal code, ignore the forest for the trees, decide the matter based on minor grammatical differences, and move on to the next part of the swamp.

**{¶ 36}** The General Assembly would do well to start over with R.C. 2929.20, trade the arbitrary waiting periods for more reasonable ones, and give both trial-court judges and rehabilitated offenders the chance to more efficiently and meaningfully use the judicial-release process.

## CONCLUSION

**{¶ 37}** If the judicial-release statute were not arbitrary and instead appropriately gave judges the power to allow a would-be productive member of society to leave confinement, there would be nothing to resolve in this case and no need to reverse the court of appeals' judgment. But the statute is indeed arbitrary, at the expense of judicial discretion and taxpayer dollars. Accordingly, I reluctantly concur in the judgment.

_____

G. Gary Tyack, Franklin County Prosecuting Attorney, and Darren M. Burgess, Assistant Prosecuting Attorney, for appellant.

Steven S. Nolder, for appellee.

_____